DUGALD A. McMILLAN

*v.*

EBENEZER JAMES *et al.*

*Filed at Ottawa November 20, 1882*

1. ARBITRATION AND AWARD—*certainty in the award.* The matters involved in a suit in chancery instituted for the dissolution of a partnership existing between the parties, for an accounting, and for the appointment of a receiver, etc., were referred to arbitrators. The business of the firm was the manufacture and sale of lumber. One clause of the award provided "that the two-thirds interest in the land occupied by E. J. (one of the partners,) for his saw-mill, be charged to him at $10 per acre,—descriptions and acres being as follows:" giving a description of the land, the number of acres, and the amount as being $307.33. On objection that it was uncertain from the award whether the partner E. J. was to have title to the land described in this clause at the sum of $307.33, or whether that sum was to be charged to him for the use of the land, it was considered, reading that clause by itself would raise a doubt in that respect. But subsequent clauses in the award found that the partnership did not own any of the improvements on the land so described, and directed that the partners convey all the partnership lands, including the tract occupied by the mill, to the receiver, to be sold for partnership purposes. This cleared up the uncertainty complained of, and showed that the partner E. J. was not to have title to the land so occupied by him, but was to be charged $307.33 for its use and occupation.

2. SAME—*award to be liberally construed.* An award being the judgment of a tribunal of the parties' own choosing, should be liberally construed to sustain it.

3. SAME—*what is embraced in the submission—as to the scope of a bill in chancery—allowance of interest on money advanced by a partner.* A bill in chancery for the dissolution of a partnership, the appointment of a receiver, and the settlement of the partnership accounts, in a statement of

the condition of the firm as to solvency, under the head of its indebtedness, gave the following: "For capital invested therein by complainants jointly, $33,416.57," and "for capital invested therein by James alone, $20,295.70;" but it appeared therein that this last item was paid by James to save the partnership property, in which he was interested, from sale under mortgage for a debt owing by the firm, and which he was not required to pay alone by any partnership arrangement: *Held*, that the mention in the bill of this sum as capital invested by James, should not be taken as meaning anything more than that it was money advanced by him for the use of the partnership, and that such characterization would not preclude him from the right to interest on the sum so paid by him. So, on a submission to arbitration of the matters involved in the bill, the question of the allowance of such interest was proper to be considered by the arbitrators.

4. SAME—*award not defeated by a conditional sale by one of the parties.* Where an award is made, under a submission of a bill in chancery for the settlement of partnership matters to. arbitration, that two of the partners holding partnership lands in trust for the firm shall convey the same to a receiver appointed by the court, to be sold for the benefit of the firm, the fact that one of the partners so holding the title in trust has made a conditional sale of the same, to be binding if he shall within two years acquire the title, will afford no ground for refusing judgment on the award and for setting it aside. Such an arrangement would not embarrass the title, or interfere with the ability of the partners holding the title to convey it to the receiver, or affect the sale of the lands to be made by him.

5. SUBROGATION—*to mortgage lien a joint owner is compelled to pay to protect his own interest.* Where two partners purchase lands in trust for the firm, giving a mortgage back to secure the purchase money, which the whole firm is to pay, but neglects to do, and one of the partners is compelled to pay the debt to protect his own interest and save the property from sale under a power in the mortgage, he will have a clear right to be subrogated to the lien of the mortgagee.

6. PRACTICE—*time to make objection.* An objection to the entry of judgment upon an award made under a submission by order of the court, which might be obviated by further evidence in the court below, comes too late when made in this court for the first time. To be availed of it should be made in the court below, so as to give an opportunity to meet and remove the ground of objection.

7. CHANCERY—*complainant not limited to the particular relief prayed for.* A complainant in a bill with a prayer for general relief, may have such relief as the facts stated in the bill, and proven, entitle him to, without his having in the bill claimed or averred title to that particular relief.

8. SAME—*complainant not bound by incorrect conclusion from facts.* A complainant in a bill should not be concluded by a statement therein, when it is manifest that it is an incorrect conclusion from the actual facts stated.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Stephenson county; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. J. A. CRAIN, for the plaintiff in error:

The award is void for uncertainty, and because it can not be known thereby whether James is to have the land mentioned in the 17th clause or not. *Ingram* v. *Wetmore,* 75 Ill. 31; *McDonnell* v. *Bacon,* 3 Scam. 428; *Tucker* v. *Page,* 69 Ill. 179; *Alfred* v. *Kankakee R. R. Co.* 92 id. 609.

The bill fixes the character of the money on which interest was allowed, as capital invested, upon which, *per se,* interest is not allowable. *Moss* v. *McCall,* 75 Ill. 190; *Tutt* v. *Lund,* 50 Ga. 339; *Beachams* v. *Eckford,* 2 Sandf. Ch. 127; 2 Lindley on Partnership, 786.

It was improper to allow interest in the award as to matters in which none was claimed in bill which was referred. *Merritt* v. *Thompson,* 27 N. Y. 229; *Chase* v. *Strain,* 15 N. H. 538; *In re Williams,* 4 Denio, 199; *Race* v. *Sullivan,* 1 Bradw. 98; *Mills* v. *Hany,* 35 Ill. 174; *Udall* v. *Steamship "Ohio,"* 17 How. 18; *Chester* v. *Lewis,* 29 Ill. 503; *Prescott* v. *Maxwell,* 48 id. 83; *Herman* v. *Shrader,* 74 id. 160.

As to the effect of the sale by James after the award but before decree, see *Eastman* v. *Armstrong,* 26 Ill. 218; *Burnsides* v. *Potts,* 23 id. 415; *Adams* v. *Bradley,* 12 Mich. 349.

Mr. HENRY C. HYDE, for the defendants in error:

Arbitrators being a tribunal of the parties' own selection, every presumption will be indulged to sustain their award. *Hadaway* v. *Kelly,* 78 Ill. 286; *Burrows* v. *Guthrie,* 61 id. 70; *Darst* v. *Collier,* 86 id. 96; *Henrickson* v. *Reinback,* 33 id. 299; *McDonald* v. *Arnout,* 14 id. 58.

The award finding these lands partnership property, and partnership liabilities, exceeding $60,000, properly directed

a conveyance and sale of them to pay debts of the firm.    A court of equity would have done the same thing.    Collyer on Partnership, (6th ed.) sec. 383; 3 Kent's Commentaries, sec. 64; *Bopp* v. *Fox et al.* 63 Ill. 540; *Ruffner* v. *McConnel*, 17 id. 212; *Gudgell* v. *Pettigrew*, 26 id. 305.

Certainty to a common intent is all that is required under the rule that an award must be certain.    *Tucker* v. *Page*, 69 Ill. 179; *Burrows* v. *Guthrie*, 61 id. 70.

The clause charging James a certain sum for the premises occupied by him for a saw-mill, is explained by a subsequent direction requiring him to convey the same to the receiver, to be sold with the other partnership property.    This shows the charge was for the prior use of the property only.

The complainant is not concluded by stating, as a legal conclusion, that certain payments for the firm were capital invested.    His rights will depend upon the actual facts stated. *Allen et al.* v. *Woodruff et al.* 96 Ill. 10.

It is objected that no interest could be allowed because not specifically prayed for in the bill.    Under the general prayer it could be allowed if justified by the facts stated in the bill.    *Hopkins et al.* v. *Snedaker*, 71 Ill. 449; *Stanley* v. *Valentine*, 79 id. 544.

As to James' right to subrogation, see *Jacques et al.* v. *Fackney et al.* 64 Ill. 87; *City National Bank of Ottawa* v. *Dudgeon*, 65 id. 11; *Billings* v. *Sprague*, 49 id. 509; *Phones* v. *Barber*, 49 id. 379; *Kirkpatrick* v. *Howk*, 80 id. 122; *Simpson* v. *Gardner*, 97 id. 237.

The right of a trustee in equity to be reimbursed, principal and interest, for money voluntarily paid in discharging an incumbrance on trust property, is well settled.    Hill on Trustees, (3d Am. ed.) 572; *Murray* v. *De Rottenham*, 6 Johns. Ch. 52; *King* v. *Cushman*, 41 Ill. 31; *Quackenbush* v. *Leonard*, 9 Paige, 334; *Draper* v. *Gordon*, 4 Sandf. Ch. 210; *McClanahan* v. *Henderson*, 2 A. K. Marsh. 388.

If there was anything in the objection that James had put it out of his power to perform the award, by a sale of the property, it should have been raised in the court below to the rendition of judgment on the award, and comes now too late.  *Duncan* v. *Fletcher*, Breese, 252; *Gudgell* v. *Pettigrew*, 26 Ill. 305; *Burrows* v. *Guthrie*, 61 id. 70.

Mr. Justice Sheldon delivered the opinion of the Court:

Ebenezer James and Augustus T. Stelle filed their bill of complaint in the Stephenson county circuit court, against Dugald McMillan, May 22, 1878, praying for a dissolution of the partnership between the parties, an accounting, the appointment of a receiver, and for relief generally.  The bill alleged a verbal co-partnership was formed in 1871, between the complainants, who were residents of Wisconsin, where they had been engaged in manufacturing lumber, and the defendant, who was carrying on a lumber yard at Freeport, Illinois, the partnership being formed to do a lumber business at Freeport, and all that was agreed to being, that complainants should each share one-fourth, and defendant one-half, the profits and losses, and defendant to devote his entire time and attention to the business.  A receiver of the firm assets was appointed, the defendant filed his answer to the bill, and at the March term, 1880, of the circuit court, the parties agreed to submit the cause to arbitration, and in accordance with their written stipulation the court made an order of reference and submission of the "cause and the matters involved in said suit, the same being for a full and final settlement of the partnership," to the arbitration of three persons chosen by the parties.  The arbitrators made their award on the 4th day of September, 1880, and the complainants filed a copy of the award in the circuit court, at its September term, 1880, and at the December term, 1880, moved for judgment on the award, and the defendant

filed objections.   The motion was heard at the ·March term, 1881, and the defendant's objections .were overruled, and a decree rendered ·upon the award.   Defendant brought this .writ of error to reverse the decree.

The question· which is presented is upon the sufficiency of the objections to the entry of judgment on the award.   There is no pretense of any fraud or misconduct whatever in respect of the making of the award.

There were several specific objections to the award filed in the court below, one of which was, that the 17th clause of the award is indefinite and uncertain.   That clause is as follows :

"17.   That the two-thirds ($\frac{2}{3}$) interest in the land occupied by Ebenezer James for his saw-mill, be charged to him at $10 per acre,—descriptions and acres being as follows :   The undivided two-thirds ($\frac{2}{3}$) of lot two (2), section six (6), town forty-one (41) north, range 15 west, containing forty-six (46) and $\frac{10}{100}$ acres, according to government survey, and amounting to $307.33. "

It is said to be uncertain whether James is to have title to the land described in this clause at $307.33, or whether that sum is to be charged to James for the use of the land. Reading the clause by itself does raise a doubt in this respect. This two-thirds interest was the interest of the partnership in the land, the title standing in the names of James and McMillan, one-third in each, in trust for the partnership, the other one-third being owned by one McArthur.   The next following clause in the award finds that the partnership do not own any of the improvements on the land mentioned in clause 17.   By the 19th and 20th clauses of the award both the defendant and· James are ordered to convey all partnership lands, including said lot 2, to the receiver, and he is ordered to sell the same for partnership purposes.   This seems to clear up the uncertainty there is in clause 17,— whether James is to have the title to the $46\frac{10}{100}$ acres described therein.

Taking the whole award together, then, it would seem to show that this tract was not to be conveyed to James, and he have title to it, but that it was to be conveyed by James and McMillan to the receiver, to be sold by him for partnership uses, and that the construction should be that this charge of $307.33 against James was for the use and occupation of the land. An award being the judgment of a tribunal of the parties' own choosing, should be liberally construed to sustain it. *Henrickson* v. *Reinbeck*, 33 Ill. 302.

The affairs of this partnership were very extended and complicated. The award must have been the result of a long and laborious investigation. Counsel say several weeks were spent in hearing evidence. This 46 acres of land was but one tract of a quantity of some 14,000 acres of pine lands in which the partnership had a two-thirds interest, and it would be a matter of regret if the whole award should have to be set aside for the uncertainty which appears in this comparatively insignificant portion of it. We can not think that the legal rule as to the certainty of awards requires that this award should be set aside upon the ground of this objection, and we hold it insufficient.

The 5th and 6th clauses of the award are:

"5. That Ebenezer James, individually, has paid on lands belonging to the firm the sum of $20,301.60, being the lands described in the bill.

"6. That Ebenezer James paid the above mentioned amount to protect partnership property, and is entitled to interest thereon from the time of making said payments, at the rate of seven per cent per annum, which, up to the date of this finding, amounts to $8044."

Another of the objections is to this allowance of interest. It is claimed that this interest was not involved in the suit, and so was not a subject of the submission which was made to the arbitrators. The bill sets out that the landed property which is found by the 5th and 6th clauses of the award to

belong to the firm, was purchased by and for the firm in 1872, of the vendors, Dean and Decker, for $41,315; that the lands were pine lands, situate in the State of Michigan; that the legal title thereto was taken in the names of James and defendant, McMillan, as tenants in common, but that they held the same as trustees of the firm; that to secure part of the purchase money therefor, McMillan and James gave their joint notes to Dean for $16,087, and to Decker for $21,226, and secured the payment of the notes by their joint mortgages on the lands to Dean and Decker; that some of the notes drew interest at ten per cent, and the remainder at eight per cent, per annum, and that the notes and mortgages were given pursuant to an agreement between the firm and James that the same should be paid, as they fell due, by the partnership; and that when the notes to Decker fell due, the firm made default in payment, and James was forced to pay the same himself, out of his individual funds, and did so pay $19,196.06. This sum, together with two other sums, of $375 and $724.64, which James paid individually on the lands, amounting to $20,295.70, constitute the amount which is mentioned in the 5th clause of the award as paid on the lands by James,—there appearing the slight discrepancy of $5.90 in the two amounts.

The first ground upon which it is contended this interest was not involved in the suit, and so not within the submission, is, that "the bill fixes the character of the money on which interest is allowed, as *capital invested*, upon which, *per se*, interest is not allowed." The bill treating this money so advanced as capital invested, and interest not being allowable by law upon capital, it is claimed there could be no recovery of interest under the allegations of the bill,—that they would preclude any such recovery, and therefore this interest was not involved in the suit, and not a matter submitted to the arbitrators. We think that this objection ascribes too much consequence to the allegations of the bill

in the regard named. All of allegation in this respect which we discover in the bill is, that in a statement of the condition of the firm as to solvency, under the head of its indebtness, there appears as follows: "For capital invested therein by complainants jointly, $33,416.57; for capital invested therein by James alone, $20,295.70,"—and in another place, in an enumeration of the items of the firm's indebtedness, there is a repetition of the same.

The bill states particularly all the facts in regard to the payment of the money as herein above set forth, in connection with which there is no characterization of the money paid as capital invested, but a simple statement of the facts, which shows a case of the right of subrogation in respect to the mortgage paid by James, and we do not think that upon the whole showing of the bill this right of subrogation should be held as debarred, and any claim of interest precluded, on account of the incidental designation of the money, as above stated, as capital invested. The money was compulsorily paid by James to save partnership property in which he was interested. It was not within any partnership arrangement that he should pay it, but the contrary, that the firm should pay it; and the mention of it in the bill, among the partnership liabilities, as capital invested in the partnership by James, should not, we think, be taken as meaning any more than that it was money advanced by James for the use of the partnership. See *Allen* v. *Woodruff*, 96 Ill. 18, that a complainant in a bill should not be concluded by such a statement, where it is an incorrect conclusion from the actual facts stated.

Another ground upon which it is urged that this interest was not involved in the suit and not a matter submitted, is, that there is no claim in the bill of a right of subrogation, or of interest. There is no express claim in the bill to either, but facts are stated which show the right thereto, and that, we think, was enough,—that the complainant in a bill, with

a prayer for general relief, may have such relief as the facts stated in the bill, and proven, entitle him to, without having in the bill claimed, or averred title to, that particular relief. No question is made, as there could not be successfully, of the right of subrogation here. It was a plain case of such right. This court has so applied that doctrine in the case of a co-tenant paying off a purchase money mortgage, given by himself and his co-tenant, on land owned by them as tenants in common, as to allow on the payment the same rate of interest, of ten per cent, as the original debt called for. (*Simpson* v. *Gardiner*, 97 Ill. 237.) The mortgage notes paid in the present case were bearing, some ten, and the rest eight, per cent interest. The award allows James seven per cent interest on his payment. We regard this allowance of interest as no more than was just and equitable,—that it was involved in the suit and within the submission, the allegations of the bill not precluding, but warranting, its recovery.

A further objection now made is, "that James having, after the award but before decree, sold the title to the interest standing in his name in the firm lands lying in Michigan, to 'Hewitt and Smith,' mortgagees then in possession, without knowledge on their part that he held that title in trust for the firm, and without knowledge of the pendency of this suit, James thereby so changed the condition of the subject matter of the award that the decree passed upon the award can not be executed without prejudice to said firm lands, and said decree should be reversed and said award set aside." We think it must be held a sufficient answer to this objection that it is made for the first time in this court. Nine specific objections in writing against the entering of judgment on the award were filed in the court below, but in no one of them is there any intimation made that James had sold the title to the interest in the lands standing in his name to Hewitt and Smith, nor does it in any way appear that there was any objection made in that court for such reason. It is replied

that this matter of objection was embraced in the fifth objection filed, which stated that James had sold to Hewitt and Smith the timber growing on 6000 acres of these partnership lands, and that the latter, in pursuance of the sale, were cutting and carrying away the timber. That relates, as we understand, to another and distinct subject.

It appears that at the request of defendant, Hewitt and Smith had purchased the Dean mortgage, above spoken of, which had been given on the lands purchased by defendant and James at the time of their purchase of them for part of the purchase money, and that in September, 1879, there was an arrangement entered into that Hewitt and Smith should go on and cut pine logs and timber on the mortgaged lands, and account therefor at the rate of one dollar per thousand feet, by applying the same on the mortgage debt. This, as we take it, is the transaction which is aimed at by said fifth objection, which is another than that of the sale by James of the title to the interest in the lands standing in his name. The affidavits on the hearing of the objection showed very clearly that the aforesaid arrangement for cutting the timber and applying the proceeds on the mortgage, was made by Hewitt and Smith with the defendant himself, and afterwards assented to by James. It came out in such affidavits, in showing what and all the contract James had made in regard to the lands, that he had entered into a certain contract with Hewitt and Smith in respect to conveying to them the title, and it is said this was sufficient that such fact appeared before the court. But still it does not appear that that fact of the sale of the title was made any point of objection to judgment on the award.

As respects such alleged sale of title by James, it appeared that Hewitt and Smith caused the lands embraced in the mortgage held by them (the Dean mortgage) to be advertised for sale, November 1, 1880, under a power of sale in the mortgage; that the award was not made in time to be

filed in the court below before its September term, 1880, and so no action on the award could have been taken by the court at that term, unless by consent; that the receiver, as James had been informed, was ready to advance the money to pay off the mortgage and stop the sale, if the lands were conveyed to him as by the award directed; that James applied to defendant for his consent to the court's action upon the award at the September term, or to join James in conveying the lands to the receiver, but that defendant refused to do either; that James then applied to Hewitt and Smith to postpone the sale; that they refused, but (in the words of Hewitt and Smith themselves, in their joint affidavit,) "offered to protect said James against loss by said sale, upon condition that if said James should, within two years thereafter, obtain the legal title to the undivided two-thirds of said mortgaged lands, and have the legal right to sell and convey the same, then he should sell and convey a certain portion of said lands to these affiants for the consideration specified in 'Exhibit A,' hereinafter attached to this affidavit, which offer, being the only one affiants were willing to make, the said James then accepted, and agreements in writing were thereupon executed by and between these affiants and said James, embodying the terms of said arrangement, of which agreements exact copies are hereto attached, marked respectively 'Exhibit A' and 'Exhibit B,' and made a part of this affidavit;" and they say these exhibits show all the purchase, or agreement for the purchase, of the lands they ever made with James. Now, if the contract was no more than is indicated by such affidavit, then it was but a conditional contract to sell and convey, in case James should, within two years, obtain the legal title to the undivided two-thirds. This would not embarrass the title, or interfere with the ability to convey it to the receiver, or affect the sale of it to be made by him. It would only be through the receiver's sale that the title could be perfected in James, and he have it to convey.

It is true that the last clause in "Exhibit B," "if said James fails to make the title to said lands, said Smith and Hewitt agree to take such part of the same as said James can make title to, or such undivided share as he can perfect title to, at the rate of seven dollars per acre," raises a doubt whether there was not something more than the conditional contract above named,—whether the contract did not operate upon the title to the one-third interest which then stood in the name of James. Still, Hewitt and Smith say the arrangement made was the conditional contract which they state, and that "Exhibits A" and "B" embody the terms of the arrangement. From all the circumstances, there is reason to suspect that such conditional contract was all the contract the parties intended to and in truth did make; that Hewitt and Smith had full notice of the situation of the partnership interest in the lands, and that the way in which it was contemplated by them James should obtain the title to the lands was through the receiver's sale, and all which might have been shown, and this ground of objection satisfactorily removed, if the objection had been made in the court below. This shows reason for requiring that the objection should have been taken below in order to be availed of here, as it would have given opportunity to have met and removed the ground of objection, which is not afforded when the objection is made here for the first time.

The other objections made to the award do not seem to be seriously insisted upon, and they are so obviously insufficient as not to call for discussion.

The decree must be affirmed.

*Decree affirmed.*