William E. Vick, Appellee, v. Illinois Banker's Life Association of Monmouth and Illinois Banker's Life Assurance Company, Appellants.

 433

filed June 4, 1934. Rehearing denied August 27, 1934.

BORDEN & MELBURG and DEWEY & CUMMINS, for appellants.

C. S. MILLER, for appellee.

MR. JUSTICE STONE delivered the opinion of the court.

This suit in assumpsit was brought by appellee on three insurance policies issued by appellant, Illinois Banker's Life Association of Monmouth, Illinois, to Flora L. Vick, now deceased, of Karnak, Illinois. The first of these policies was No. 40117 and was for $2,000. The second, No. 53150, was in all respects the same as the first except it was for $1,500. The third was issued with the same assured and the same beneficiary, was numbered 101845 and was for $2,000. Each of these provided for the amount of premium to be paid, fixed the terms of payment thereof and provided that it should lapse on failure to pay the premium in accordance therewith.

The first two of these policies provide that upon satisfactory proof that the assured has become totally and permanently disabled from any cause (the result of crime or attempted crime excepted) and would thereby be continuously prevented for life from doing

any labor, or the prosecution of any kind of business, then the association would pay to the assured upon due and sufficient proof, one-half of the face of the policy and the remains to the beneficiary at the death of the assured, the policy having been continued in force. These policies further provided that proof of disability must be furnished the association within six months after the commencement of the total and permanent disability. The third policy provided for payment to assured because of total and permanent disability brought about by accident, one-half of the amount of said policy in lieu of all other benefits and on surrender of said policy.

On November 19, 1929, The Illinois Banker's Life Association and the Illinois Banker's Life Assurance Company entered into a contract whereby the association transferred to said company its risks, and the policies issued by the association were reinsured by the company.

On May 7, 1929, Flora L. Vick submitted to the association claim for total and permanent disability under the first two policies, in the sum of $1,500. In her affidavit in connection with the claim she swore that she became totally and permanently disabled on May 1, 1928. The company denied liability on this claim. Flora L. Vick died June 4, 1932. On October 21, 1932, William E. Vick, beneficiary in all three of the policies, made claim for the amounts provided therein. On November 18, 1932, appellant, Illinois Banker's Life Association, declined to pay said claims on the ground that said policies had lapsed for non-payment of premiums. Thereafter, on December 8, 1932, Wm. E. Vick brought this suit.

The declaration sets forth the three policies *in haec verba* and alleges full compliance by Flora L. Vick and appellee of all conditions which they were to perform and a refusal to pay by the appellants. To the

amended declaration, appellants pleaded forfeiture for nonpayment of premiums. To these pleas appellee replied denying lapses of the policies and alleging that under the claim of total and permanent disability filed by Flora L. Vick in May, 1929, under the first two policies there was sufficient money in the hands of appellants to pay all instalments due on the three policies. Appellants demurred to these replications but the court overruled the demurrer. Appellants then filed rejoinders alleging that due and sufficient proof of total and permanent disability was not submitted and that no money with which to pay premiums under the provisions of said policies was due.

The jury returned a verdict in favor of appellee in the sum of $5,491.94. The court ordered a remittitur of $1,883.05, which was filed by appellee. After overruling a motion in arrest of judgment, the court awarded appellee judgment against appellants in the sum of $3,608.89. To reverse said judgment this appeal is prosecuted.

A motion was made to dismiss this appeal first because a clerical error had been made in entering the judgment. We extended the time for appellants in order that they might apply to the trial court to have this mistake corrected. The correction was made and record thereof certified to this court. The motion also alleged that appellants had failed to furnish an abstract in compliance with rule fourteen. The abstract furnished was a poor excuse for an abstract, but the same rule, the violation of which appellee complains, tells him exactly what to do in such cases.

Another mistake was made this time by appellee in the use of the word "plaintiff" instead of "assured" in his replication. He claims that he asked leave of the court to amend said replication by changing this word but the record does not disclose that any leave was given. He asked that such leave be given here,

which we are inclined to give in so far as we can without actually changing the record as it went to the jury.

It is difficult to conceive of as many mistakes being made in the trial of one lawsuit as were made in this. We have, however, brushed all these aside in so far as we could without doing violence to the rules of orderly procedure. We may say, though, that counsel owe to an appellate court the duty of presenting a record in such form that it may be understandingly read without wading through a maze of doubt as to what was done and what was intended in a given matter. Were these policies properly declared lapsed? If they were, this lawsuit is ended. They undoubtedly were lapsed, unless, as appellee claims, there was money in the hands of appellants belonging to the assured which appellants could and should have applied to the payment of such premiums on these policies as was necessary to keep them alive.

Forfeitures are not favored in Illinois and will not be upheld in contracts for insurance if by reasonable construction such result can be avoided. *Bolton v. Standard Life Ins. Co.*, 219 Ill. App. 177; *Glassman v. Lescht*, 318 Ill. 128. This is the law of the State but this does not mean that courts are to put unreasonable interpretations upon insurance contracts and thus deprive insurance companies of substantial rights inuring to them under the law, their charters and their contracts. No assessments were paid by the assured or by appellee after July, 1929. In May of that year the assured had made her claim for total and permanent disability. On May 29th of that year said claim had been denied. This left an open question whether appellants had funds in their hands belonging to the assured. The assured seemed to take for granted that appellants were indebted to her. It seems that it would have been the part of wisdom to have kept on paying her assessments until it was finally deter-

mined whether the company was indebted to her. This she did not do. But, assuming that the company was indebted to her as she claims, could the appellants have paid the delinquent premiums out of it and were they obligated so to do? Counsel rely on *Supreme Lodge v. Meister,* 204 Ill. 527. That was a case in which a double payment of premiums had been made leaving an excess in the hands of the company, which was premium money and which the company was bound to apply for that purpose.

To hold with the contention of appellee in this case is to hold that any money in the hands of an insurance company from any source belonging to the assured must without regard to the terms of the insurance contract or the wishes of the assured be applied to the payment of delinquent premiums so as to prevent lapse. We do not find warrant for this position in any authority which has come under our examination. On the other hand we are of the opinion that the late case decided in the United States Supreme Court, *Williams v. Union Central Life Ins. Co.,* 291 U. S. 170, 78 L. Ed. 711, finally determines appellee's contention adversely to him.

There was a forfeiture of these policies and the trial court erred in overruling appellants' demurrer to appellee's replications. It is true that appellants did not stand by their demurrer, but elected to plead further, but our holding that there can be no recovery under these policies makes a demurrer to the replications an effective way of making operative said holding.

The judgment is reversed and the cause remanded to the circuit court with directions to that court to sustain the demurrer to appellee's replication.

*Reversed and remanded with directions.*