Donald Norek, Plaintiff-Appellant, *v.* Charles Herold, Chief of Police of the City of Berwyn, *et al.*, Defendants-Appellees.

(No. 61289;

First District (5th Division)—August 8, 1975.

Alan Masters, of Summit, for appellant.

O'Shea and Quan, of Forest Park, for appellees.

Mr. PRESIDING JUSTICE BARRETT delivered the opinion of the court:

Plaintiff brings this appeal from a judgment of the circuit court which affirmed an order of the Board of Fire and Police Commissioners finding him guilty of conduct unbecoming a police officer and immoral conduct, and discharging him from the Police Department of the city of Berwyn, Illinois.

He raises four issues for this court's consideration: (1) whether the Board of Fire and Police Commissioners lacked jurisdiction to hear this matter; (2) whether the search and seizure of motorcycles and motorcycle parts was invalid as no search warrants were admitted into evidence before the Hearing Board; (3) whether the Berwyn Police Department Rules and Regulations were void since adopted by a body not properly empowered to adopt such Rules and Regulations; and (4) whether the decision of the Board of Fire and Police Commissioners was against the manifest weight of the evidence.

Plaintiff, a patrolman on the police force for the city of Berwyn, was charged on July 21, 1971, with participating in eight acts of misconduct constituting violations of rules 2 and 51 of the Revised Rules and Regulations of the Police Department of the city of Berwyn.[1] A hearing on said charges was originally scheduled for August 12, 1971. Both parties then obtained numerous continuances and the hearing was ultimately commenced on July 13, 1973. At the beginning of the hearing attorney for complainant stated that no evidence would be presented on any charge other than paragraph eight, which stated:

> "That said respondent Donald Norek, at his home at 2532 Gunderson Avenue, Berwyn, Illinois, on or about July 20, 1971, had in his possession to-wit, 3 stolen motorcycles at a value of approxi-

---

[1] Rule 2. Conduct—No member of the Department shall conduct himself in a manner unbecoming a police officer or employee of the Police Department.
Rule 51. Immoral Conduct—No member of the Department shall conduct himself in an immoral manner.

mately Two Thousand Dollars ($2,000.00) each and various and diverse motorcycle parts, which said motorcycles and motorcycle parts were not the property of said respondent."

Charles Herold, complainant and chief of police of the city of Berwyn, testified that he ordered the detective division to instigate an investigation of allegations of a motorcycle ring operating in the city of Berwyn, supposedly under the direction of plaintiff.

Dennis Kovarik, a police officer assigned to the detective division, testified that on July 19, 1971, he and Lieutenant Manek obtained a search warrant for the premises located at 2532 Gunderson Avenue where plaintiff resided. He stated that the warrant authorized the officers to search the premises for motorcycles or motorcycle parts. He proceeded to the premises on July 19, 1971, accompanied by an officer of the Cook County sheriff's office, an assistant State's Attorney, and numerous other members of the Berwyn Police Department. Upon their arrival, and finding no one in the residence, the officers proceeded to the entrance of the plaintiff's garage. The officers entered the garage by removing various locks and observed three motorcycles and numerous motorcycle parts. Photographs of the contents of the garage were taken and an inventory indicated the presence of one Harley-Davidson motorcycle, green in color with a white seat and chrome sissy bar, a second Harley-Davidson blue in color, and one Triumph motorcycle. The officers then took the motorcycles from plaintiff's garage to the Berwyn Police Department where they were placed in the custody of detectives Pabst and Wedekind.

On cross-examination, Kovarik testified that he had not observed plaintiff committing any crimes during the period he was investigating the matter, and that there had been no surveillance of the plaintiff's garage or home to observe who was entering or leaving the premises. He stated that the Triumph motorcycle was a stolen vehicle, but admitted that he had not received any information to support this conclusion or from whom it was taken. He further testified that the investigation indicated that the blue Harley-Davidson vehicle was not a stolen motorcycle and that it belonged to Albert Mattson who had left it in the plaintiff's garage.

Kovarik testified on redirect examination that both the Triumph and the green Harley-Davidson motorcycles had altered serial numbers and that the latter also had stolen parts attached to it, including the seat, front end, engine, transmission, rear and front tire, and rear and front rim. On re-cross-examination, Kovarik identified respondent's Exhibit Number Three as a title for a 1959 Triumph motorcycle issued to Dennis Taubery and respondent's Exhibit Number Four as a motorcycle identi-

fication card also issued to Dennis Taubery. He further identified respondent's Exhibits Six and Seven as a title to a green Harley-Davidson motorcycle and registration for the same vehicle issued to Richard Russo.

Wayne Jensik was called to testify and stated that in May, 1971, he purchased a custom Harley-Davidson motorcycle from the plaintiff. He described the motorcycle as one with custom handlebars, custom seat, a sissy bar that was poorly welded and a white seat that was torn on the top. He testified that the motorcycle was stolen approximately 2 weeks following the purchase; that he next saw his white seat and sissy bar, with the same identifiable characteristics, 2 months later in the Berwyn Police Station affixed to a different motorcycle. On cross-examination, Jensik admitted that it was not unusual to see a motorcycle with a custom made sissy bar, and that there is nothing unusual about the seat involved and that there are many like it on other motorcycles.

Richard Wedekind testified next and stated his occupation as a special assistant with the National Auto Theft Bureau. It was stipulated that the witness was an expert in identification of motor vehicles, the determination of whether original vehicle numbers have been removed and the restoration of numbers. He stated that he examined several motorcycles in Berwyn on July 19, 1971, at the Berwyn Police Department including a Harley-Davidson that bore the number 64 XL CH 4373. After the examination he concluded that the surface of the metal appeared to have been ground and the number restamped to 64 XL CH 4373. He further testified that examination of a Triumph motorcycle bearing number T 1200 24 682 indicated that the area had been ground and the number T 1200 24 682 had been restamped on the engine. He stated that through the use of a restoration process numbers TR 6 06 813 appeared immediately below the numbers which had been stamped on the motorcycle. He concluded his testimony by stating that in his expert opinion the original numbers on the motorcycles' engines had been ground off and had been restamped with the numbers presently found on the engines. On cross-examination Wedekind testified that there had been no report filed to indicate that the green Harley-Davidson or Triumph had been stolen. He stated that the fact that a number is ground off or a new number restamped does not in and of itself indicate that the vehicle has been stolen; that in some states it is legal to alter numbers, even though it is illegal in Illinois.

Detective Edward Pabst of the Berwyn Police Department was the next witness to testify. He stated that on July 19, 1971, he received three motorcycles from Detective Kovarik that had been taken from the garage at 2532 Gunderson Avenue; that he examined the numbers on the motorcycles and placed them in the evidence room.

Lieutenant Frank Manek of the Berwyn Police Department was called as a witness. He stated that he was present with others on July 19, 1971, as they proceeded to the plaintiff's residence; that he entered the garage and observed a Cadillac vehicle, three motorcycles, and various motorcycle parts. He identified the motorcycles as a green Triumph, a blue Harley-Davidson, and a green Harley-Davidson with a white seat and chrome sissy bar. He stated that in the month prior to July 19, 1971, he had observed plaintiff riding a motorcycle on two occasions. On each occasion Manek described the motorcycle driven by plaintiff as green with a white seat and chrome sissy bar. He stated that he next saw a vehicle with similar characteristics to the one driven by plaintiff in plaintiff's garage on July 19, 1971. On cross-examination, Manek testified that it was late afternoon or early evening on both instances that he observed plaintiff driving the motorcycle; that he did not notice the license plate or the State of issuance. He stated that he distinguished different makes of motorcycles by the size of the vehicle and that the motorcycle he saw plaintiff driving could have been one other than a Harley-Davidson model.

Plaintiff called as his first and only witness Dennis Taubery. Taubery testified that he knew plaintiff; that he was a frequent visitor at plaintiff's garage whether plaintiff was present or not; and that he and other persons, including Al Mattson and Richard Russo, had their own set of keys to the garage. He stated that besides the above mentioned persons who possessed keys, there had also been a set of keys kept outside the garage for the last 3 to 4 years. He testified that he owned a Triumph motorcycle and that the purpose of frequent visits to the plaintiff's garage was to work on the motorcycle. He then observed complainant's Exhibit Number Twelve, a photograph of a Triumph motorcycle taken in plaintiff's garage on July 19, 1971, and identified it as his own motorcycle. He was then shown complainant's Exhibit Number Sixteen, another photograph of a motorcycle, and identified it as one belonging to Richard Russo that he had been working on during a period up to July 19, 1971. He stated that the motorcycle had a white seat and sissy bar attached to it when he was working on it; that he did not know who placed them on the motorcycle; and that he never saw plaintiff working on, nor driving that motorcycle. He concluded his testimony by indicating that he never saw plaintiff, nor anyone else committing any illegal act in the garage. On cross-examination, Taubery testified that he agreed to work on Russo's motorcycle and that he suggested that Russo bring the motorcycle to plaintiff's garage; that Russo brought the motorcycle to the garage and left it there for repair; and that he believed he did some work on the motorcycle.

Following the conclusion of the hearing, the Board of Fire and Police Commissioners made the following findings and order:

"3. That the property including the garage at 2532 Gunderson, Berwyn, was occupied by Donald Norek and the said Donald Norek was in possession and control of the premises on to wit: July 19, 1971.

4. That the green Harley-Davidson motorcycle with altered vehicle identification number 64 XL CH 43 73 and the Triumph motorcycle with altered vehicle identification number T 12002 4682 had the original vehicle identification numbers removed and the existing vehicle identification numbers were restamped and inserted in the obliterated sites of the original vehicle identification numbers. That possession of the said vehicles by Donald Norek was a violation of Illinois Revised Statutes 1971, CH 95½, Sec. 4—102(d) and 4—103(d)   *   *   *.

*   *   *

5. That the white seat and chrome sissy bar found in the garage at 2532 Gunderson Avenue, Berwyn, Illinois, was affixed and attached to the green Harley-Davidson and was the property and possession of Wayne Jensik. The seat and bar was purchased as components of a motorcycle which Jensik purchased from Donald Norek in May of 1971 and which was stolen from Jensik in June of 1971. That possession of such property was in violation of Ill. Rev. Stat. 1971, Ch. 38, Sec. 16—1(d)   *   *   *.

*   *   *

6. That on to wit: July 19, 1971, the respondent Donald Norek was in possession of motor vehicles, namely: a green 1964 Harley Davidson motorcycle and a Triumph motorcycle with altered vehicle identification numbers and further possessed certain stolen property in the form of a white motorcycle seat and sissy bar knowing that the same had been stolen or under circumstances as would reasonably induce the said Donald Norek to believe that said property was stolen all in violation of law."

The Board concluded that the aforementioned conduct constituted a violation of the Police Department Rules and Regulations in that such activities amounted to conduct unbecoming a police officer and immoral conduct and ordered plaintiff discharged from his position as patrolman of the Berwyn Police Department. Plaintiff then filed a complaint for review of the hearing in the circuit court of Cook County. The circuit

court affirmed the order of the Commission and plaintiff appeals from that judgment.

OPINION

Plaintiff's first contention is that the Board of Fire and Police Commissioners of the city of Berwyn lacked jurisdiction to decide this matter. As support plaintiff relies on section 10—2.1—17 of the Municipal Code which provides in relevant part:

"Except as hereinafter provided, no officer or member of the fire or police department of any municipality subject to this Division 2.1 shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense. The board of fire and police commissioners shall conduct a fair and impartial hearing of the charges, *to be commenced within 30 days of the filing thereof*, which hearing may be continued from time to time." (Emphasis added.) [2]

Plaintiff suggests that since the charges were filed July 21, 1971, and the hearing was not commenced until July 13, 1973, the Board failed to comply with the above statutory requirement and, therefore, lost jurisdiction to hear and decided the matter. We disagree.

■■ We begin by noting that while the record is clear that nearly 2 years elapsed between the filing of charges against plaintiff and commencement of the hearing to decide the matter, the record is silent as to the party responsible for such delay and the date on which any continuance was granted. If plaintiff was responsible for the initial delay causing the commencement of the hearing to occur more than 30 days after the filing of charges he cannot now be heard to complain that his hearing did not begin within the prescribed statutory period. However, based upon an inadequate record, even this determination cannot be made with certainty.

■■ It is a well-established principle that a party who brings a cause to a reviewing court must present a record which clearly indicates the errors allegedly committed by a lower court or administrative body. It is the duty of appellant to present a record to a reviewing court containing all matters material and necessary for a decision of the questions involved. (*Herbst v. Paul*, 339 Ill.App. 301, 89 N.E.2d 843; *Perez v. Janota*, 107 Ill.App.2d 90, 246 N.E.2d 42.) As noted in *Vick v. Illinois Banker's Life Association*, 276 Ill.App. 432, 436, "counsel owe to an appellate court the duty of presenting a record in such form that it may be understandingly read without wading through a maze of doubt as to

[2] Ill. Rev. Stat. 1973, ch. 24, par. 10—2.1—17.

what was done and what was intended in a given matter." Based upon a record that fails to indicate who was responsible for requesting any continuance or the date on which any was granted leaves this court no recourse but to dismiss plaintiff's unsupported contention.

■■ Plaintiff's second contention is that the search and seizure of motorcycles and motorcycle parts was invalid as no search warrants were admitted into evidence before the Hearing Board. We begin the resolution of this issue by noting that neither the record of the hearing before the Board, nor the subsequent complaint filed by plaintiff in the circuit court indicate a formal objection by plaintiff to the use of evidence that may have been unlawfully seized. Plaintiff filed no motion to suppress evidence before the Board, nor does any paragraph in plaintiff's complaint seeking initial judicial review mention an unlawful search and seizure.

An analogous situation was present in the case of *People v. Harris*, 33 Ill.2d 389, where the defendant charged with armed robbery alleged in the trial court that there had been an improper identification and that he had found certain property owned by the victim. On appeal, defendant's sole argument was that the victim's property was obtained as a result of an illegal search and seizure pursuant to an illegal arrest. As to the contention raised for the first time on appeal our supreme court stated:

> "[W]e have carefully examined the entire record and find that neither the defendant nor his counsel had at any time moved to suppress the evidence in question. We also find a complete lack of any objection to the admission of this evidence on the ground that it was illegally obtained or on any other specific ground.
>
> ❖    ❖    ❖
>
> It is well settled that this court will not consider the question of illegal search and seizure, even though pursuant to an illegal arrest, where it has not been raised before the trial court. [Citations.] Justice will not be served by permitting a defendant to proceed through an entire trial without raising alleged error and then take advantage of such error on an appeal from an adverse judgment." 33 Ill.2d 390, 391.

We similarly conclude that plaintiff cannot fail to raise the validity of a search and seizure in both an administrative hearing and lower court review, and then complain for the first time before this court.

■■ Plaintiff's third contention is that the Rules and Regulations of the Police Department of the city of Berwyn are void since they were adopted by the Board of Fire and Police Commissioners which was not properly empowered to adopt such Rules and Regulations. In support

of this contention counsel has cited sections of the Illinois Revised Statutes which have been repealed, do not exist, and do not apply. It is appellant's duty to present an intelligible argument which a reviewing court may rule upon. We dismiss plaintiff's contention as being without merit.

■■ Plaintiff's final contention is that the Board of Fire and Police Commissioners' findings and decision were against the manifest weight of the evidence. Plaintiff was charged in paragraph eight with possession of three stolen motorcycles and "various and diverse motorcycle parts." While the record supports plaintiff's contention that not all the motorcycles were, in fact, stolen, it is uncontroverted that plaintiff did possess certain stolen parts of motorcycles. Officer Kovarik testified that one of the motorcycles taken from plaintiff's garage had stolen parts attached to it, including the seat, front end, engine, transmission, rear and front tire, and rear and front rim. Wayne Jensik testified that he purchased a custom Harley-Davidson motorcycle from plaintiff in May, 1971, which included a white seat torn on the top and a poorly welded sissy bar; that his motorcycle was stolen approximately 2 weeks thereafter; and that he next saw his white seat and sissy bar with the same identifiable characteristics 2 months later in the Berwyn Police Station affixed to a different motorcycle obtained from the plaintiff's garage. Lieutenant Manek testified to having twice seen plaintiff driving a green motorcycle with white seat and chrome sissy bar in June, 1971; and that he next saw a vehicle with similar characteristics in plaintiff's garage on July 19, 1971, when executing a search warrant. Dennis Taubery testified that Richard Russo brought a motorcycle to the plaintiff's garage for repair; that it had a white seat and a sissy bar attached to it when he was working on it; that he did not know who affixed the seat and sissy bar to the vehicle; and that he never saw plaintiff working on or driving the motorcycle. The plaintiff presented no independent evidence to contradict the testimony that he possessed certain stolen motorcycle parts. In *Rauland Division, Zenith Radio Corp. v. Metropolitan Sanitary District*, 9 Ill.App.3d 864, 874, 293 N.E.2d 432, the court, in discussing its power to review administrative findings stated:

> "The scope of review upon appeal from an administrative decision is limited. A reviewing court cannot substitute its judgment for that of the administrative agency if there is substantial evidence in the record to support the agency's findings. Its findings of fact cannot be overturned unless they are against the manifest weight of the evidence."

Applying the above stated principle to the case at bar, we cannot con-

clude that the findings or decision of the Board of Fire and Police Commissioners .was against the manifest weight of the evidence.

For the reasons stated above, the order of the circuit court confirming the decision of the Board of Fire and Police Commissioners is affirmed.

Affirmed.

DRUCKER and LORENZ, JJ., concur.