BOBBIE EARL DAVIS *et al.*, Petitioners-Appellees, *v.* SYED AKBAR BUGHDADI *et al.*, Defendants-Appellants.

Fifth District No. 83—262

Opinion filed December 23, 1983.

Sharon Sigwerth Costa, of Mt. Vernon, for appellants.

Larry D. Gibson, of Law Offices of Sharp and Gibson, P.C., of Mt. Vernon, for appellees.

JUSTICE HARRISON delivered the opinion of the court:

Syed Akbar Bughdadi appeals a judgment of adoption entered in the circuit court of Jefferson County terminating his parental rights with regard to his natural son. This order was entered after a hearing pursuant to a petition for adoption filed by the child's natural mother, Beth Ann Davis, and her husband, Bobbie Earl Davis. The final order of adoption was entered subsequent to an interim order terminating Mr. Bughdadi's parental rights. Mr. Bughdadi also appeals the court's dismissal of a petition for rule to show cause filed against Mrs. Davis. We determine (1) that we are without jurisdiction to consider the dismissal of the petition against Mrs. Davis, and (2) that the order terminating Mr. Bughdadi's parental rights was not supported by the manifest weight of the evidence before the trial court.

On December 18, 1980, a judgment for dissolution of marriage was entered dissolving the marriage of Beth Ann Bughdadi, petitioner, and Syed Akbar Bughdadi, respondent. The petitioner was granted custody of the couple's 17-month-old son, Syed Ahmed

Bughdadi. Respondent was ordered to pay child support and was granted visitation privileges with regard to his son. Respondent's failure to pay support prompted petitioner to file a petition for contempt against respondent on April 3, 1981. Respondent thereafter paid arrearages accruing through March 1981, but made no subsequent payments. Petitioner filed a petition for rule to show cause on August 27, 1982, seeking payment of support owing from March 1981. On this same date, petitioner and her new husband, Bobbie Earl Davis, filed a petition for adoption of Syed Ahmed Bughdadi, alleging that respondent had failed to maintain a reasonable degree of interest, concern, or responsibility for the child, and that respondent was therefore an unfit person within the meaning of section 1(D)(b) of the Adoption Act (Ill. Rev. Stat. 1981, ch. 40, par. 1501D(b)):

"D. 'Unfit person' means any person whom the court shall find to be unfit to have a child, without regard to the likelihood that the child will be placed for adoption, the grounds of such unfitness being any one or more of the following:
***

(b) failure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare; ***."

The petition was amended on December 9, 1982, to allege the additional ground of abandonment of the child. On September 15, 1982, respondent filed a petition for rule to show cause against petitioner, alleging that she had deliberately concealed her whereabouts in order to deny respondent's visitation rights according to the terms of the marital settlement. After a consolidated hearing, the circuit court entered three separate orders on December 30, 1982. An order was issued finding respondent in wilful contempt of court for failure to pay child support. A second order dismissed the petition for rule to show cause against petitioner. A third order found respondent an unfit person within section 1(D)(b) of the Adoption Act for failure to maintain a reasonable degree of interest, concern or responsibility as to his son's welfare, and terminated his parental rights. Respondent filed a notice of interlocutory appeal of the order terminating his parental rights. The notice was filed on January 28, 1983, and was voluntarily dismissed, without prejudice, on March 29, 1983. A final order of adoption was entered by the circuit court on March 21, 1983, declaring Syed Ahmed Bughdadi the child of Bobbie Earl Davis and Beth Ann Davis, and changing the child's name to Matthew Tyler Davis. Respondent appeals the orders dismissing the petition for rule to show cause against petitioner, the order terminating his parental rights, and the final judgment of adoption.

Supreme Court Rule 303 (87 Ill. 2d R. 303(a)) requires that a notice of appeal be filed with the clerk of the circuit court within 30 days of the final judgment in order to preserve the issue for appeal. An order arising from a contempt proceeding is final and appealable, even though it may occur within the context of another proceeding. (*People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 172, 429 N.E.2d 483.) The order dismissing the petition to show cause filed against petitioner was issued by the circuit court on December 30, 1982. Thereafter, no notice of appeal was filed. The issue is raised for the first time in respondent's brief. We thus determine that appeal of the order dismissing the petition against Mrs. Davis is untimely, and this court is without jurisdiction to consider the issue.

Petitioners argue that the order terminating respondent's parental rights is also untimely, in light of the following provisions of Supreme Court Rule 307 (87 Ill. 2d R. 307):

"(a) Orders Appealable; Time. An appeal may be taken to the Appellate Court from any interlocutory order of court:

\* \* \*

(6) terminating parental rights or granting, denying or revoking temporary commitment in adoption cases;

\*\*\*

The appeal must be perfected within 30 days from the entry of the interlocutory order by filing a notice of appeal designated 'Notice of Interlocutory Appeal' conforming substantially to the notice of appeal in other cases. The record must be filed in the Appellate Court within the same 30 days unless the time for filing the record is extended by the Appellate Court or any judge thereof."

Petitioners also cite section 17 of the Adoption Act:

"Sec. 17 Effect of order terminating parental rights or order. After the entry either of an order terminating parental rights or the entry of an order of adoption, the natural parents of a child sought to be adopted shall be relieved of all parental responsibility for such child and shall be deprived of all legal rights as respects the child, and the child shall be free from all obligations of maintenance and obedience as respects such natural parents." Ill. Rev. Stat. 1981, ch. 40, par. 1521.

The sum of petitioners' argument, as we comprehend it, is that Supreme Court Rule 307 should be construed as providing the exclusive mechanism for appeal of an order terminating parental rights, since section 17 ostensibly precludes a natural parent from proceeding through regular legal channels once such an order has

been issued. We find this argument untenable in light of established principles of statutory construction. Rule 307 states only that an interlocutory appeal *may* be taken from an order terminating parental rights, not that such an appeal must be taken in order to preserve review of the order. A statute is open to construction only where its language requires interpretation or may reasonably be considered ambiguous. (See 73 Am. Jur. 2d *Statutes* sec. 194 (1974).) A construction of a statute, variant from the strict and literal meaning, is justified only upon the ground that it effectuates the intention of the legislature manifestly disclosed by a consideration of the whole context. (*Wunderle v. Wunderle* (1893), 144 Ill. 40, 62, 33 N.E. 195, *error dismissed* (1893), 154 U.S. 524, 38 L. Ed. 1078, 14 S. Ct. 1156.) *In re Workman* (1978), 56 Ill. App. 3d 1007, 373 N.E.2d 39, *aff'd* (1979), 76 Ill. 2d 256, 390 N.E.2d 900, cited by petitioners, holds only that section 17 (formerly Ill. Rev. Stat. 1975, ch. 4, par. 9.1—17) precludes an individual from seeking restoration of his or her parental rights by means of a petition to modify an order terminating such rights after the time for appealing the order has expired. There is nothing in the court's opinion to suggest that appeal of such an order must be exercised solely through the provisions of Rule 307. The language of section 17 neither expressly supports this proposition nor implicitly suggests that such was the intent of the legislature. A court may not adopt an interpretation of a statute which would have the effect of making the legislature say what it has not said. (*Wunderle v. Wunderle* (1893), 144 Ill. 40, 62.) In the instant case, the issue of whether the circuit court's determination of respondent's unfitness as a parent was against the manifest weight of the evidence is properly before us, since the determination of unfitness was made pursuant to the Davis' petition for adoption, and the appeal was filed and perfected within the statutory period following the order granting this petition. An appeal from a final judgment draws into question all prior, nonfinal orders and rulings which produced the judgment. (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 433, 394 N.E.2d 380.) Respondent's failure to perfect an interlocutory appeal following the interim order terminating his parental rights cannot act to bar an appeal of the final judgment of adoption.

The testimony pertaining to respondent's fitness as a parent was conflicting. Petitioner testified that respondent visited their son on Christmas Day, 1980, and made no visits thereafter. Petitioner's mother, Glenna Johnson, testified that she spoke on the telephone with respondent on February 14, 1981; April 17, 1981; and July 9, 1981. She stated that during the April 17, 1981, conversation, she

gave respondent specific directions to Mrs. Davis' married residence. (Mrs. Davis had moved from her mother's home on January 7, 1981, and had not informed respondent of her new address. She testified that she wished her ex-husband's visitation of their son to take place through Mrs. Johnson.) Respondent testified that he had talked to Mrs. Johnson regarding his son on numerous occasions, that he had made several trips to Mrs. Johnson's house attempting to exercise his visitation rights, that he had been denied visitation on these occasions, and that he had never been given directions to his former wife's residence. He further testified that he sent Christmas and birthday cards to his son. Mrs. Davis admitted in her deposition that she had never informed respondent of her new residence, and that she maintained an unlisted telephone number. Additional evidence indicated that Mrs. Davis did not file a forwarding address with the post office after she ceased residing at her mother's home. The trial court resolved the essential points of contention in favor of petitioners:

> "It is the court's opinion and finding had a [sic]—reviewing all the evidence presented and especially, and I say especially, having determined and looked at the credit [sic]—or, evidence the credibility of the witnesses [sic] that the Petitioner's testimony is certainly more believable than that that has been presented here by the Respondent.
>
> * * *
>
> Now, I want to make it very clear to you, sir [addressing respondent], I'm not making that finding [of unfitness] in any way based on your failure to pay child support. It is certainly a factor that—that I have reviewed, that I am not resting my decision, in any way, in making this finding [sic]. I do not believe that you had any contact with these people, their family, or your child other than Christmas day [sic], 1980; February 14, 1981; Feb-April [sic] 17, 1981; and July 9, 1981."

The termination of parental rights is an extreme action, justified only upon clear and convincing evidence of unfitness presented in strict compliance with the Adoption Act. (*Pyatt v. Pyatt* (1980), 88 Ill. App. 3d 8, 19, 410 N.E.2d 241.) While it is within the discretion of the trial court to attribute greater credibility to the testimony of one party over that of another, we cannot agree that petitioners have met the requisite evidentiary burden even when all essential conflicts are resolved in their favor. "When dealing with cases of this nature, it is not a question of searching for fixed standards or binding precedent. Each case is *sui generis*. [Citation.] It is of little

use to compare frequency of visits, cards, or gifts with the frequency in other cases." (*Blakey v. Blakey* (1979), 72 Ill. App. 3d 946, 948, 391 N.E.2d 222.) Nevertheless, a dispassionate reason and the principle of *stare decisis* dictate at least a minimal comparison of decisional fact patterns. Such a comparison reveals that where the courts of our State have upheld the finding of a parent's unfitness on the ground of failure to maintain a reasonable degree of interest, concern or responsibility as to a child's welfare, or in cases where a contrary finding has been reversed, the parents involved have made comparatively fewer attempts to contact their children over comparatively longer periods. See, *e.g., Pyatt v. Pyatt; In re Adoption of Richards* (1982), 104 Ill. App. 3d 406, 432 N.E.2d 1037; *Adams v. Adams* (1982), 103 Ill. App. 3d 126, 430 N.E.2d 744; *Freeman v. Settle* (1979), 75 Ill. App. 3d 799, 393 N.E.2d 1385.

■■ Respondent attributed his failure to make more frequent contacts with his son to the efforts of his former wife and her family to frustrate his attempts to exercise visitation rights. It is apparent that respondent was never notified by his former wife of her whereabouts after January of 1981. This would indicate, at a minimum, that Mrs. Davis wished to make visitation difficult. The contention is supported by Mrs. Davis' further efforts to retain anonymity—*e.g.,* her acquisition of an unlisted telephone number and her failure to register a forwarding address at the post office. The fact that a custodial parent denies or hinders the visitation rights of a noncustodial parent may be a significant element weighing against the clear and convincing determination of the noncustodial parent's indifference to his or her child. (*Cf. Culkin v. Culkin* (1975), 30 Ill. App. 3d 1073, 333 N.E.2d 698.) If respondent was in fact notified of his former wife's residence by Mrs. Johnson, his subsequent failure to act on this information may reasonably be viewed as evidence of a lack of serious interest in his son; however, this evidence cannot, in itself, satisfy the clear and convincing standard necessary to terminate the rights of a natural parent.

■■ In a similar vein, respondent's erratic child support payments cannot sustain a finding of parental unfitness. Failure to supply support, however reprehensible, must be examined in light of all surrounding circumstances. (*Carlson v. Oberling* (1966), 73 Ill. App. 2d 412, 416, 218 N.E.2d 820.) Respondent testified that, faced with what he perceived as an inability to freely exercise his rights of visitation, he continued to withhold support both as a matter of equity and to put pressure on petitioner. "While, by law, there is no reciprocal relation between visitation rights and support duties, the layman

often views them as connected." (*Perkins v. Breitbarth* (1981), 99 Ill. App. 3d 135, 140, 424 N.E.2d 1361.) Such an attitude is neither justifiable under the law nor appropriate to one who purports to be a mature parent. We hold simply that, insofar as the action of withholding support payments reflects a popularly held sentiment, it cannot, in light of all the circumstances of this case, provide clear and convincing proof of respondent's unfitness as a parent according to the strict terms of the Adoption Act. We therefore reverse the judgment of adoption.

Reversed.

JONES and KASSERMAN, JJ., concur.