MIDWEST BANK & TRUST COMPANY, Plaintiff-Appellant, v. RONALD RODERICK *et al.*, Defendants-Appellees.

First District (5th Division) No. 84—1724

Opinion filed March 29, 1985.

Mardyth E. Pollard, Douglas Drenk, and David Drenk, all of Guerard, Konewko & Drenk, Ltd., of Chicago, for appellant.

Raymond A. Fylstra and Stephen H. Pugh, Jr., both of Chapman & Cutler, of Chicago, for appellee Ronald Roderick.

JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff appeals the dismissal of its action for judgment on the unpaid balance of a promissory note. It contends that section 9—504 of the Uniform Commercial Code (Ill. Rev. Stat. 1983, ch. 26, par. 9—504(3)) did not require it to give defendant Roderick notice of the sale of collateral where Roderick's co-debtor, rather than plaintiff, sold the collateral. In the alternative, plaintiff contends that lack of notice is not a complete bar to a deficiency judgment, but instead gives rise to the rebuttable presumption that the value of the collateral was equal to the amount of the debt.

In March 1981, plaintiff loaned $80,000 to Connie's Pizza Systems, Inc. (Connie's), secured by all of Connie's equipment at its Lombard location. The promissory note was executed on behalf of Connie's by defendants Roderick and Stolfe—its secretary and president, respectively—who are also personally liable on the note. The debtors eventually stopped making payments, and Connie's recovered approximately $23,000 by selling some of its equipment. Plaintiff, after applying the proceeds of that sale to the loan, brought an action against Roderick and Stolfe seeking judgment for the amount of the loan outstanding plus interest. Stolfe was never served, and Roderick moved

to dismiss—alleging that the bank repossessed and sold the collateral without notifying him of the sale. The trial court granted Roderick's motion, and this appeal followed. After oral argument in this court, plaintiff moved to rearrange Stolfe as plaintiff-appellant, pursuant to Supreme Court Rule 366 (87 Ill. 2d R. 366), because it had assigned its interest in the note and in the remaining collateral to Stolfe.

OPINION

■ We first address the motion to rearrange the parties. Supreme Court Rule 366 grants a reviewing court the discretionary power to substitute or rearrange parties by reason of assignment, and we note that we are to do so on such terms as we deem just. 87 Ill. 2d R. 366(a)(2); see also Ill. Rev. Stat. 1983, ch. 110, par. 2—1008(a).

Roderick correctly observes that this court has not been properly informed of the details surrounding the assignment to Stolfe, and we have previously stated that attorneys owe this court a duty to present a record "in such form that it may be understandingly read without wading through a maze of doubt as to what was done and what was intended in a given matter." (*Norek v. Herold* (1975), 31 Ill. App. 3d 514, 520-21, 334 N.E.2d 220, 225, quoting *Vick v. Illinois Banker's Life Association* (1934), 276 Ill. App. 432, 436.) This well-established principle is equally applicable to the present situation, where the bank is asking us to exercise our discretion on a motion filed after oral argument without providing us with information necessary for us to determine whether there should be such a rearrangement. Taking into consideration the scarcity of facts before us concerning the assignment, the nature of the original notice issue, and the fact that nothing further needs to be done in this appeal by the parties, we believe it is more appropriate to proceed with the parties as presently aligned, and we therefore deny plaintiff's motion to rearrange defendant Stolfe as plaintiff-appellant.

■ ■ In addition to opposing plaintiff's motion to rearrange, Roderick also asks this court to dismiss the appeal as moot. He argues in his response to the motion to rearrange that Stolfe may properly bring an action for contribution, but—as co-maker—cannot maintain an action on the note. Interestingly, this argument demonstrates the necessity of proceeding with this appeal as briefed, because an action for contribution does not exist unless the party who brings the action paid more than his share of the joint indebtedness or would be liable to the original plaintiff for the debt. (*Cunningham v. Lawrence* (1959), 16 Ill. 2d 201, 157 N.E.2d 50; see also *Roberts v. Heilgeist* (1984), 124 Ill. App. 3d 1082, 465 N.E.2d 658.) Thus, even if we were

to find that this appeal is moot, a finding which we do not make,[1] we could not dismiss this appeal and leave in effect an erroneous order which might adversely affect the rights of the parties. See *Kohan v. Rimland School for Autistic Children* (1981), 102 Ill. App. 3d 524, 430 N.E.2d 139.

■ Although we will not go into an extensive discussion of the other defenses raised by Roderick at this time, we do note that—as co-maker—he expressly consented to any renewal, extension, or modification of the note and, on the basis of such language in the note, the defense of discharge (Ill. Rev. Stat. 1983, ch. 26, par. 3—601) upon which Roderick also relies in asking for dismissal may not be available to him. (See *American National Bank v. Warner* (1984), 127 Ill. App. 3d 203, 468 N.E.2d 184.) We therefore cannot find, on the record before us, that this appeal must be dismissed, and we will not speculate regarding other defenses available to Roderick. Upon remand, it is within the discretion of the trial court to allow Stolfe to be substituted as plaintiff pursuant to section 2—1008 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1008), and any defenses available to Roderick would more appropriately be addressed at the trial court level after the facts surrounding the assignment are known.

■ We proceed, then, to plaintiff's contention that it was not required by the statute to give notice of the sale of the collateral where it was not the seller. Roderick argues that plaintiff·cannot collect a deficiency judgment[2] because the statute which establishes the se-

---

[1]In support of his argument, Roderick refers us to *Gillham v. Troeckler* (1940), 304 Ill. App. 596, 26 N.E.2d 413, where the co-maker initiated suit on the note after the assignment. The critical time period, however, is the commencement of the suit (see *Locks v. North Towne National Bank* (1983), 115 Ill. App. 3d 729, 451 N.E.2d 19), and we are not referred to any authority which states that a subsequent transfer by assignment renders the issue on appeal moot. The general rule is that transfer of an instrument vests in the transferee such rights as the transferor had. (Ill. Rev. Stat. 1983, ch. 17, par. 602; Ill. Rev. Stat. 1983, ch. 26, par. 3—201.) The effect of the subsequent assignment is more appropriately decided in the trial court after briefing and argument by the parties.

[2]Roderick argued in the trial court that failure to give notice constituted an absolute bar to a deficiency judgment. After the trial court ruling in the present case, however, the Illinois Supreme Court rejected the absolute-bar concept in favor of the rebuttable-presumption rule, which allows the creditor who sold the collateral without notice to rebut the presumption that the value of the collateral sold was equal to the indebtedness. (*First Galesburg National Bank & Trust Co. v. Joannides* (1984), 103 Ill. 2d 294, 469 N.E.2d 180.) Although the bank here argues that it should have been allowed to file an amended complaint in keeping with the rebuttable-presumption rule, we do not reach that issue as a result of our finding on the notice requirement.

cured party's right to dispose of collateral after default also provides that "reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor" (Ill. Rev. Stat. 1983, ch. 26, par. 9—504(3)), and the parties here agree that no notice was sent by plaintiff to Roderick, a debtor. We note also that in his affidavit, Roderick stated he was vice president and secretary of Connie's at the time the collateral was sold and his mailing address was Evergreen, Colorado; that he received correspondence regarding the note from plaintiff at his Colorado address; but that he received no notice of the sale of the equipment.

The record indicates that Roderick's argument and the subsequent trial court decision emphasized the duty of a selling-secured-party to notify each of the debtors. Plaintiff does not disagree with such an interpretation, and the issue on appeal here is whether the notice requirement of section 9—504(3) applies to a secured party who does not actually dispose of the collateral. We believe it is clear that section 9—504 applies only to a disposition effected by the secured party. The captions of the Uniform Commercial Code, as enacted by the Illinois legislature, are parts of the Act (Ill. Rev. Stat. 1983, ch. 26, par. 1—109), and the caption of section 9—504 states: "*Secured party's* right to dispose of collateral after default—Effect of disposition." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 26, par. 9—504.) Nowhere in the body of the section is reference made to disposition by any other party, and since "[a] construction of a statute, variant from the strict and literal meaning, is justified only upon the ground that it effectuates the intention of the legislature *manifestly* disclosed by a consideration of the whole context" (emphasis added) (*Davis v. Bughdadi* (1983), 120 Ill. App. 3d 236, 241, 458 N.E.2d 177, 180), we do not believe section 9—504 may be interpreted to include dispositions otherwise not within the statute which are neither specifically referred to in the body of the statute nor encompassed by the caption.

Although our research has found little case law which specifically addresses the application of the notice requirement where the collateral was not disposed of by the secured party, courts presented with the issue have generally rejected such an interpretation with little comment. (See *Lewis v. Mount Greenwood Bank* (1980), 91 Ill. App. 3d 481, 414 N.E.2d 1079; see also *Krueger v. Bank of America National Trust & Savings Association* (1983), 145 Cal. App. 3d 204, 193 Cal. Rptr. 322.) Apparently, the parties' search was even less fruitful, because no authority whatsoever has been cited by either party. At

oral argument, Roderick referred us to cases cited in his brief which concerned impairment of collateral, but we note that the defense of impairment of collateral (Ill. Rev. Stat. 1983, ch. 26, par. 3—606) is not available to Roderick as a co-maker of the note (*Main Bank v. Baker* (1981), 86 Ill. 2d 188, 427 N.E.2d 94), and thus the analogy offered by Roderick lends little support to his argument.

Roderick himself agrees with the basic interpretation of section 9—504, because he initially brought his motion to dismiss based on an allegation that the secured creditor repossessed the collateral and began to sell it. When he discovered that the bank had merely consented to the debtor's request to be allowed to sell the equipment, however, Roderick attempted to bring the sale within the statute with two alternative arguments.

■ His first argument is that the section 9—504(3) notice requirements cover "other intended dispositions" and therefore cover a situation where a party other than the secured creditor makes the disposition, including, as here, the debtor's selling the equipment in an attempt to pay the loan. However, we may not adopt an interpretation of the statute which would have the effect of making the legislature say what it has not said (*Davis v. Bughdadi* (1983), 120 Ill. App. 3d 236, 458 N.E.2d 177), and the language of section 9—504 neither expressly indicates nor implicitly implies that the legislature intended the interpretation advanced by Roderick.

> "A statute which directs responsibility to an identifiable person speaks with greater force and vigor. To say that '[w]henever a structure is in disrepair it shall be destroyed' requires an unnecessary amount of conjecture and interpretation. Who shall determine when it is in disrepair? Who shall destroy it? The draftsman should have determined these questions and should specify with particularity the person upon whom the responsibility is to be placed.
>
> The first responsibility of a draftsman is to determine what particular individuals must comply with the statutory directive. This requires first, precision of thought and second, exactness of expression." (1A A. Sutherland, Statutory Construction sec. 21.07 (4th ed. 1972).)

Here, the statute provides: "*A secured party* after default may sell, lease, or otherwise dispose of any or all of the collateral ***." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 26, par. 9—504(1).) The language of the statute clearly indicates that the section applies only to other dispositions which are made by the secured party, and nothing in the statutory definition of "secured party" expands such applica-

tion. (See Ill. Rev. Stat. 1983, ch. 26, par. 9—105(1)(m), and official comment thereto.) Although Roderick refers to the drafters' use of the words "other disposition," "other intended disposition," or "otherwise disposed of" in section 9—504 without repetition of "secured party" as the subject of the sentence, it is well established that a word or phrase is presumed to have the same meaning throughout a statute. (*Borg v. Village of Schiller Park Police Pension Board* (1982), 111 Ill. App. 3d 653, 444 N.E.2d 631, *aff'd* (1984), 99 Ill. 2d 376, 459 N.E.2d 951.) As previously discussed, the statute caption also specifically referred to action taken by the secured creditor, and we believe the only reasonable interpretation of the statute is that "other disposition" is intended to encompass all types of financial arrangements rather than to extend the responsibility of the secured party. See generally, 1A U.C.C. Serv. (MB) sec. 8.04[2][a][iv] (1984).

■ Roderick's second argument is that by consenting to the sale and accepting the proceeds thereof, plaintiff's participation was such that it should be considered the seller of the collateral for purposes of the notice requirement. We note, however, that although the notice requirement calls for very specific notification, including details such as time and place of sale (Ill. Rev. Stat. 1983, ch. 26, par. 9—504(3); see, *e.g., Staley Employee Credit Union v. Christie* (1982), 111 Ill. App. 3d 165, 443 N.E.2d 731; *Spillers v. First National Bank* (1980), 81 Ill. App. 3d 199, 400 N.E.2d 1057; but see *Ford Motor Credit Co. v. Jackson* (1984), 126 Ill. App. 3d 124, 466 N.E.2d 1330), Roderick wishes us to require a secured creditor to notify a debtor of a sale made by his co-debtor despite the absence of a corresponding duty in the default provisions which would require the selling debtor to give secured-creditor detailed information about its activities. We believe such an interpretation would be unreasonable and "[i]t has been called a golden rule of statutory interpretation that unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result." (2A A. Sutherland, Statutory Construction sec. 45.12 (4th ed. 1984).) In our view, the interpretation advanced by Roderick would also require the secured party to insure that every aspect of the sale be commercially reasonable despite the inability of the bank to control the actions of the debtor. Even in *State National Bank v. Northwest Dodge, Inc.* (1982), 108 Ill. App. 3d 376, 438 N.E.2d 1345, in which the court granted a high degree of protection for the debtor by following the old absolute-bar rule, the court stated:

"The burdens placed on the creditor under the Code are mini-

mal, while the results of his noncompliance may be very onerous to the debtor. *** We are unable to see any unfairness in protecting the debtor's rights to the exclusion of those of the creditor when the creditor has been placed in such a high degree of control over the relationship and carries such a small burden inorder [*sic*] to gain the advantages of the Statute." (108 Ill. App. 3d 376, 381, 438 N.E.2d 1345, 1349, quoting *Wilmington Trust Co. v. Conner* (Del. 1980), 415 A.2d 773, 780.)

Here, the burden placed on the creditor would not be minimal but could very well be impossible to meet. In light of the above, we reject the interpretation advanced by Roderick as being unfair and unreasonable. Imposition of such a burden on the secured party would actually impede a debtor's ability to work out its own financial difficulties. See 1A U.C.C. Serv. (MB) sec. 8.01A[2][b] (1984).

We also observe that while the purpose of the default provisions seems to be the prevention of overreaching on the part of the secured party after default (see generally Ill. Ann. Stat., ch. 26, par. 9—501, U.C.C. Comment 1, at 321 (Smith-Hurd 1974)), Roderick asks us to expand the protection afforded him in section 9—504 to include protection from Roderick's own business arrangements and associates. We note, however, that even if plaintiff had complied with the statutory notice requirement, Roderick would be in no better position. He correctly states in his brief that the parties may determine the standards by which the fulfillment of their rights and duties under part 5 of article 9 is to be determined if such standards are not manifestly unreasonable (see Ill. Rev. Stat. 1983, ch. 26, par. 9—501(3)), and he points out that the parties here agreed that all debtors would receive notice by mail at least five days before the sale or disposition. He neglects to point out, however, that the note also provides that reasonable notice would be met if the notice was mailed to the address of the debtors as shown on the note, *or* to any other address of the debtors appearing on the records of plaintiff. The only address listed on the note is the business address of Connie's Pizza, at 920 Ridge Avenue in Lombard, and thus, even if plaintiff had sent statutory notice—which we believe it was not required to do—Roderick would not have been protected from the actions of his own corporation.

■ Additionally, in its recent decision which rejected the absolute-bar rule in favor of the rebuttable-presumption rule where the selling party has sold the collateral without notice to all debtors, the Illinois Supreme Court indicated that the absolute-bar rule provided a wind-

fall for the debtor and arbitrarily penalized the creditor (*First Galesburg National Bank & Trust Co. v. Joannides* (1984), 103 Ill. 2d 294, 469 N.E.2d 180), and we believe such a result is equally undesirable with respect to the notice requirement. This is particularly so in the present case, where the windfall for Roderick would seem to result either from his own lack of attention to his business or from his own business arrangements and partners rather than from any overreaching on the part of the secured creditor. There is no basis in the statute for the expanded application proposed by defendant, and we therefore cannot apply the statutory notice requirement to a secured creditor who did not actually make the sale but merely consented to a debtor's sale of the collateral and then applied the proceeds of that sale to the outstanding loan.

██ Finally, we observe that it is possible to approach this case from an entirely different perspective. The default provisions of article 9 allow a secured creditor to pursue any other remedies he may have (Ill. Rev. Stat. 1983, ch. 26, par. 9—501(1); see also Ill. Ann. Stat., ch. 26, par. 9—501, U.C.C. Comment b, at 322 (Smith-Hurd 1974)), and the secured creditor is therefore not required to proceed under part 5 of article 9. Here, plaintiff had the contractual right to demand payment on the note from Roderick,[3] a co-maker (Ill. Rev. Stat. 1983, ch. 26, par. 3—413), and where it neither repossessed nor sold the collateral, it appears that plaintiff did not elect to proceed under article 9, but, rather, proceeded under article 3. We have previously stated that it is the exercise of the article 9 right to dispose of collateral which obligates a secured creditor to comply with the notice provision (*State National Bank v. Northwest Dodge, Inc.* (1982), 108 Ill. App. 3d 376, 438 N.E.2d 1345), and under either analysis, then, the bank was under no obligation to notify Roderick of Connie's sale of its equipment.

For the foregoing reasons, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

MEJDA, P.J., and LORENZ, J., concur.

---

[3]It is not significant for purposes of the issue on appeal that the bank did not join Connie's as a defendant in the action or that it did not serve Stolfe, because the bank had the right to proceed against only one of the co-makers. Ill. Rev. Stat. 1983, ch. 17, par. 606; Ill. Rev. Stat. 1983, ch. 110, par. 2—403.