**J. L. Harris, Appellant, v. Ella T. Buder, Executrix of Estate of E. A. Buder, Deceased, Appellee.**

**Term No. 45F8.**

472

Heard in this court at the May term, 1945. Opinion filed July 7, 1945. Released for publication August 7, 1945.

DOROTHY WILBOURN, of Cairo, for appellant.

D. B. REID and CHARLES L. RICE, both of Cairo, for appellee.

MR. JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Alexander county, in favor of appellee, Ella T. Buder, executrix of the estate of E. A. Buder, deceased (hereinafter called defendant), in an action for contribution which was originally brought by the appellant, J. L. Harris (hereinafter called plaintiff) as against E. A. Buder, as defendant. After the action was instituted E. A. Buder died and his executrix, Ella T. Buder, was substituted as defendant. The complaint upon which the proceedings were had alleged the execution and delivery of eight promissory notes upon which the defendant, E. A. Buder, and the plaintiff, J. L. Harris, were either makers or indorsers, and the Cairo-Alexander County Bank was the payee. In the complaint it is alleged that the bank referred to was insolvent and a receiver had been appointed therefor, and that a demand was made by the receiver of the bank and litigation threatened to enforce payment of the notes, and the plaintiff, J. L. Harris, paid the sum of $31,756.11 to the receiver upon the notes referred to. It was then alleged in the complaint that de-

fendant, E. A. Buder, became indebted to the plaintiff in the sum of $6,481.02 for his proportionate share of the money so paid on the notes. As a result of amended pleadings interest was claimed on such amount, and a number of affirmative defenses were set up by defendant in her answer and amendments thereto.

It was disclosed on the trial of the matter in the court below that the plaintiff, on January 21, 1937, paid the $31,756.11 on the notes as a result of proceedings by which the plaintiff Harris petitioned the circuit court (in a separate proceeding) asking that a set-off of the notes against his moneys in the bank be approved by the court. An order was entered to that effect on January 21, 1937.

The notes involved in this proceeding were executed at various dates, beginning March 16, 1928, and ending February 9, 1930. Each note expressly stated that there was to be no priority as between indorsers and there was a waiver of demand, presentment, etc. All of the notes were signed by E. A. Buder, the original defendant, J. L. Harris, C. V. Neff, and David S. Lansden, either as makers or indorsers, and a W. B. Thistlewood signed as a maker or indorser on all but one of the notes. All of the persons named were at the time of the execution of the notes, stockholders and directors of the Cairo-Alexander County Bank. At the time of the execution of the notes in 1930 the bank had, among its assets, certain paper which the State bank examiner found objectionable and classified as "slow and doubtful." As a means of removing the objectionable assets which the bank examiner would not approve, the individual directors referred to, executed the eight notes involved in this proceeding and left such notes to replace the objectionable paper, which was then removed. Interest payments were made on the notes at various times from the date of their execution, until 1931 and 1932, although there

was some question as to whether any particular defendant made such payments, or whether the original defendants, E. A. Buder, made any such payments.

C. V. Neff, one of the signers of the notes, died on August 14, 1931. A claim was filed in the C. V. Neff estate within the statutory period by the Cairo-Alexander County Bank, in the amount of $70,388.55, and the notes involved in this proceeding were a part of that claim. After the claim had been filed the bank was declared insolvent and a receiver was appointed on November 7, 1933. No action had been taken in the matter of the claim against the Neff estate until June of 1942, five years after the plaintiff had made the payment through the set-off as against his accounts in the bank, as herein stated. On June 24 of 1942, a claim was allowed as against the Neff estate for an amount ($56,572.96), which was considerably less than the amount of the claim as filed. That claim against the Neff estate so allowed, has not been paid.

In January of 1937, as has been previously indicated, the plaintiff paid $31,756.11 in discharge of the eight notes involved in this proceeding, through the set-off of money which plaintiff had on deposit with the bank at the time it went into receivership, and pursuant to an order of the circuit court. The pro rata share of the original defendant, Buder, of the debt so paid, for which the plaintiff is seeking contribution on the basis of the evidence produced in the court below, is the sum of $6,481.02, plus legal interest from the date of payment by the plaintiff. Upon trial of this cause by the court, without intervention of a jury, judgment was entered for the defendant. To sustain the judgment in her favor defendant has set up and argued, and presented on appeal, a number of defenses to which we shall give consideration in the course of this opinion.

The right to contribution arises by reason of a compulsory payment by a joint obligor of more than

his share of a common obligation (*Harvey v. Drew*, 82 Ill. 606; *Schaefer v. Dippel*, 250 Ill. App. 184), and the measure of contribution is the excess which the plaintiff paid over his own share of the obligation, plus interest from the date of payment (*McCormick v. Unity Co.*, 239 Ill. 306; *McMillan v. James*, 105 Ill. 194).

There is sufficient evidence to establish the pro rata amount of contribution for which the defendant in the instant case is obliged to pay to the plaintiff. The serious questions arising on this appeal, result from the issues raised by defendant, as a basis for the denial of the right to contribution. We shall consider such issues separately in the interest of clarity.

█ It is, apparently, primarily contended by plaintiff that there was want of consideration for the notes which were given, and that the plaintiff was under no legal obligation to pay the notes because the bank, as payee, could not have sued plaintiff on the notes and recovered. A number of cases were cited by the defendant for the purposes of establishing lack of consideration, but such cases do not deal with factual situations such as were present in the instant case. In this case the makers of the notes were directors and stockholders of the bank. They were financially interested in the bank and the notes which were given to replace objectionable assets were, therefore, supported by valid consideration (*Central Republic Trust Co. v. Evans*, 378 Ill. 58; *Tegtmeyer v. Nordlund*, 259 Ill. App. 247; *Hinsdale State Bank v. Lytle*, 262 Ill. App. 151). The cases emphasize that anything which tends to make the bank stronger or keep it going, or preserve its solvency, was a benefit to the stockholders and rests on good consideration. If, in the instant case, the signatory parties to the notes had not been directors and stockholders, the notes might have lacked consideration. The fact that they were given by stockholders and directors was sufficient consideration for the notes and they were legal obligations upon

which the bank could have sued and recovered from the defendant.

It is similarly contended that the notes were never intended to be obligations on the part of the original defendant, Buder. In support of this contention the defendant contends that there had been a conditional delivery of the notes, and that the understanding was that they were not to be collected. We do not find that contention supported by the record. No evidence was produced to show a conditional delivery, nor was any evidence referred to in argument in this court, which would be competent to make a showing of such conditional delivery.

Defendant seriously pleads and contends that the obligation of defendant is tolled by the Statute of Limitations. There is some apparent confusion in such defense for the reason that the ten-year Statute of Limitations is not applicable in this action, which was a suit for contribution. An action for contribution is an action on an implied contract and the period of limitation involved is the five-year period. The surety's right to contribution arises when the surety has paid more than his proportionate share of the total liability. The action for contribution must thereafter be filed within the five-year period, under the Illinois law (*Schroeder v. Bozarth*, 224 Ill. 310; *Whittemore v. Weber*, 217 Ill. App. 628). The suit for contribution in the instant case was filed within the five-year period of limitation, and the contention of the defendant that the ten-year Statute of Limitations from the time that the bank had a right to take action on the notes, applies in the instant case, cannot be sustained.

Further confusion is noted in the contention of defendant that the period of limitation specified in sec. 3, ch. 132, 1943 Ill. Rev. Stat. [Jones Ill. Stats. Ann. 128.03] applies. In that section it is simply provided that a claim must be filed against an estate

within one year from the issuance of letters or sureties would be released from payment to the extent that the claim might have been collected if presented within the proper time. The bank did file its claim against the Neff estate within the one-year period, and the surety consequently would not be released from his obligation on the notes. The section does not contemplate that action must be taken as against the sureties within the one-year period fixed for filing of a claim as against an estate.

It is contended also that the allowance of the claim as against the Neff estate would be a discharge of the original debt and bars the instant action for contribution. The claim of the bank and the bank's receiver, which was filed against the Neff estate, was not allowed until after the plaintiff had paid the notes pursuant to a court order. The notes had, therefore, been paid prior to the time the claim was allowed. The fact that there had been a reduction in the amount allowed on the claim tends to support the conclusion that this fact was probably considered in connection with the allowance of that claim. The plaintiff had paid the notes and had them in his possession for five years before the bank recovered its judgment. Even if the bank or the receiver had recovered an unsatisfied judgment as against a principal, it would not have discharged the surety, but if the judgment had been paid the surety would have been discharged. The evidence shows that the judgment against the Neff estate has never been paid, and that the estate is insolvent. It is, therefore, apparent that the contention that the allowance of the claim as against the Neff estate constituted a discharge of the original debt and a bar to the suit for contribution, likewise cannot be sustained.

A similar defense is raised by reason of the fact that the receiver of the payee bank released one

of the makers of two of the notes at the same time that plaintiff paid the notes, and that that action constitutes a release of all indorsers thereon. The evidence shows that plaintiff had filed a petition to set-off the notes as against his moneys in the bank, in September of 1936. On January 21, 1937, the court ordered the set-off to be made, and on that same date Lansden filed his petition for settlement of his liabilities with the bank, and that petition was also granted on the same date by order of court. The petition of the receiver in connection with Lansden's liabilities indicates that the approval of the payment of the notes by plaintiff preceded the discharge of Lansden, and was expressly conditioned on settlement with the plaintiff, which (the petition recites), had been approved by the court. It is reasonable to conclude from the record, therefore, that the court first approved the set-off and payment by Harris, and then entered an order on Lansden's petition for compromise, releasing Lansden from the remaining claims of the receiver as against him.

It is also contended by the defendant that the notes were negotiated an unreasonable length of time after the date of issuance and that plaintiff was, therefore, not a holder in due course, under ch. 98, par. 73, 1943 Ill. Rev. Stat. [Jones Ill. Stats. Ann. 89.073]. How that statute can be of any aid to defendant escapes us. The present action is a suit for contribution arising out of an implied contract by the co-makers and co-indorsers, and is not a suit on the notes, and in any event the most favorable conclusion as to defendant from an application of that section would be to permit defendant to set up the same defenses as if the notes were non-negotiable. That would be of no aid to defendant in the action for contribution.

Defendant also raises in her brief the contention that the giving of the notes involved an illegal transaction, which is contrary to public policy, and

that, therefore, contribution should be denied. The transaction disclosed by the facts was neither illegal nor immoral. The action of directors and stockholders of a bank to do what they can to protect the solvency of the bank and to safeguard the depositors, through the removal of bad or objectionable paper at the request of the State bank examiner could not be a violation of the banking laws or the basis of a finding of illegality. The action was taken to protect the bank and its assets, and apparently, for no other purpose. Nor does the evidence show that the notes were made and delivered for the purpose of deceiving the bank examiner since the paper was removed by the directors at the request of the bank examiner.

A review of the entire record in this cause, and the law applicable to the facts, establishes that the plaintiff was entitled to contribution as against defendant, and that the judgment of the circuit court for the defendant was erroneous. This cause will, therefore, be reversed and remanded to the circuit court of Alexander county, with directions to enter judgment in this proceeding in the sum of $6,481.02, together with legal interest thereon from January 21, 1937, in favor of plaintiff, J. L. Harris, and as against defendant, Ella T. Buder, executrix of the estate of E. A. Buder, deceased.

*Reversed and remanded, with directions.*