**In re RIVINIUS, INC., Debtor.**

**RIVINIUS, INC., Plaintiff–Counterdefendant–Appellant,**

v.

**CROSS MANUFACTURING, INC., Defendant–Counterplaintiff–Appellee.**

No. 91–3474.

United States Court of Appeals, Seventh Circuit.

Argued June 3, 1992.

Decided Oct. 21, 1992.

Rehearing and Rehearing En Banc Denied Dec. 21, 1992.

Timothy L. Bertschy (argued), William I. Covey, Heyl, Royster, Voelker & Allen, Peoria, Ill., for defendant-counterplaintiff-appellee.

David B. Radley (argued), Andrew Covey, Baymiller, Christison, Radley & Covey, Peoria, Ill., for debtor.

Before CUDAHY, POSNER and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Plaintiff Rivinius, Inc. brought this suit seeking a declaration that its obligation to defendant Cross Manufacturing, Inc. on a mortgage had been discharged by Rivinius' prior bankruptcy. Cross counterclaimed for foreclosure of the mortgage. After trial, however, the bankruptcy court determined that Cross could only raise a counterclaim for contribution. Cross then sought to amend its answer pursuant to Rule 15(b) of the Federal Rules of Civil Procedure to state a contribution claim. The bankruptcy court and the district court found that the amendment was proper under Rule 15(b). Cross recovered on the counterclaim and Rivinius appealed on the ground that the amendment of Cross' counterclaim was improper. Before we address the district court's determination under Rule 15(b), we will review the complex procedural history of this case.

## I.

In the 1970s, James H. Cross was the president and CEO of Rivinius as well as a majority shareholder of Cross.[1] Rivinius manufactured road maintenance equipment, while Cross owned a variety of related manufacturing companies, some of which were involved in road maintenance.

Both Rivinius and Cross experienced financial difficulties during the late 1970s. To remedy the problems, James Cross arranged for a $10,000,000 loan to Rivinius and Cross from Associates Finance Company. Under the terms of the loan, each company was jointly responsible for repayment of the loan to Associates; Rivinius was a co-guarantor on Cross' debt, and Cross was a co-guarantor on Rivinius' debt.

After receiving the loan, Rivinius continued to experience financial problems and, in 1978, Rivinius filed for Chapter XI bankruptcy. In its reorganization plan, Rivinius proposed to pay Associates only a portion of the total debt, with payments spread over the five-year period of the plan. On July 7, 1978, the plan was confirmed by the bankruptcy court without objection by any creditors.

Three months after Rivinius declared bankruptcy, James Cross attempted to arrange for the satisfaction and assignment of Rivinius' debt to Associates. To accomplish this, Cross borrowed money from the Farmers Home Administration and, on August 4, 1978, paid Associates in full. The parties agree that this released Rivinius from its loan obligation to Associates. In return for its payment of Rivinius' debt, Cross received from Associates the Rivinius note which was secured by a mortgage on Rivinius' real property. As James Cross saw it, Associates' assignment of the Rivinius note and mortgage did not release Rivinius from its obligation, but merely changed the party to whom Rivinius would be making payments.

In 1983, Rivinius completed its five-year bankruptcy reorganization plan, and its debts in the plan were discharged. However, because Cross was not listed in the plan as a creditor, Rivinius could not determine if its obligation to Cross on the Associates note had been discharged by the bankruptcy plan. In fact, the potential outstanding obligation to Cross made it impossible for Rivinius to secure other credit. Consequently, in 1983, Rivinius brought this suit against Cross in the bankruptcy court requesting a declaration that the debt to Cross had been discharged in the prior bankruptcy proceeding. In response, Cross denied that the debt had been discharged and filed a counterclaim against Rivinius, seeking foreclosure on the mortgage originally obtained by Associates.

In 1986, the bankruptcy court conducted a bench trial, after which the parties filed post-hearing briefs. Rivinius argued that Cross could not foreclose on the mortgage because it had been a co-maker of the note. Rivinius insisted that Cross could have brought an action for contribution, but pointed out that it had failed to plead a contribution claim. In its response, Cross sought to raise a claim for contribution even though the trial had concluded.

1. To avoid confusion, when discussing the owner of the companies we shall refer to "James Cross." "Cross" shall refer to Cross Manufacturing.

The bankruptcy court ruled that the promissory note to Cross Manufacturing had not been discharged, but the court also ruled that the amount of the debt would be substantially reduced from the face value of the note because of inequitable conduct on the part of James Cross.[2] As for Cross' contribution theory, the bankruptcy court ruled that any claim for contribution was barred by the Illinois statute of limitations.

Cross appealed to the district court, which reversed in part. The district court agreed that the promissory note to Associates was discharged as a matter of law when Cross paid that debt on behalf of Rivinius. The only remaining obligation was Rivinius' obligation on the note to Cross. In contrast to the bankruptcy court, the district court ruled that James Cross' inequitable conduct was not attributable to Cross Manufacturing and therefore could not be used to reduce Rivinius' debt on the note. Turning to Cross' counterclaim for foreclosure on the mortgage, the district court agreed with Rivinius that Cross and Rivinius had been co-makers of the note. Consequently, because the note to Associates had been discharged when Cross paid the debt to Associates in August of 1978, Cross could not foreclose against a co-maker. Instead, only a contribution action could be brought against Rivinius. The court explained that because the note was discharged, Cross could not sue Rivinius on the note *per se*, but it could sue Rivinius for contribution of the payments Cross made on its behalf.

The district court remanded the case to the bankruptcy court with instructions to determine whether under Rule 15(b) Cross should be allowed to amend its counterclaim to include a claim for contribution. If the bankruptcy court allowed the amendment, it was also to determine whether the contribution claim was barred by the statute of limitations.

On remand, the bankruptcy court held that Cross could amend its counterclaim to include a claim for contribution, finding Rivinius had impliedly consented to the amendment because issues relevant to the contribution theory had been raised during the trial. The bankruptcy court stated:

> In this case Cross did not plead, nor did the parties proceed to trial, on the theory of contribution. *However, in the course of the trial, the facts did come out which established the right of contribution.* The record is quite clear that Debtor, Cross, and its subsidiaries all signed the note. The record is equally clear that Cross paid Associates and took an assignment of the note.

(Emphasis added). The court further found that Rivinius would not be prejudiced by amendment and that there was no statute of limitations which would bar the claim.

The bankruptcy court allowed Cross to present further evidence on its contribution theory. One of Cross' officers testified concerning the loan from Associates to the companies, and explained how the funds from the loan were distributed and how the loan was to be repaid. Rivinius' objection to the admission of that evidence was overruled. After considering the evidence and reviewing the transcript of the bench trial, the bankruptcy judge found that the evidence established that Rivinius owed Cross approximately $500,000 on the contribution claim. Rivinius appealed that determination to the district court.

Before the district court, Rivinius argued that under Rule 15(b) Cross should not have been allowed to amend its complaint because it had not consented to the amendment. Rivinius also contended that Rule 15(b) did not permit amendment because the factual issues involved in the contribution action were not actually tried in the bench trial. Alternatively, Rivinius argued that it was denied its right to a jury trial on the issue of contribution.

The district court affirmed the judgment of the bankruptcy court. It agreed with

---

**2.** The bankruptcy judge determined that James Cross had acted inequitably during the period when he controlled Rivinius and Cross. At that time, James Cross had transferred a corporation which belonged to Rivinius, the Littleford Line, to another corporation he controlled allegedly without compensating Rivinius.

Cross that the issues relevant to the contribution claim had been raised in the original bench trial in the bankruptcy court. It also found Rivinius' argument that Cross' counterclaim was barred by the statute of limitations to be without merit because Rivinius had waived any statute of limitations defense when it filed its complaint. *See* ILL.REV.STAT. ch. 110, ¶ 13–207. This appeal followed.

## II.

The district and appellate courts review the factual findings of the bankruptcy court for clear error but review the bankruptcy court's legal conclusions under a *de novo* standard. *Matter of Newman*, 903 F.2d 1150, 1152 (7th Cir.1990); *Matter of Bonnett*, 895 F.2d 1155, 1157 (7th Cir. 1989); Bankruptcy Rule 8013. Moreover, our review of the factual findings is not limited to the district court's decision but extends to the bankruptcy court's findings of fact. *Id.; In re First Wisconsin National Bank*, 849 F.2d 284, 286 (7th Cir. 1988); *In re Kimzey*, 761 F.2d 421, 423 (7th Cir.1985).

■ In this court Rivinius presses its argument that the bankruptcy court erred in applying Rule 15(b) to allow Cross to bring its counterclaim. Because that is a question of law, our review is *de novo*. *Bonnett*, 895 F.2d at 1157. Rule 15(b) provides that:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment....

FED.R.CIV.P. 15(b) (emphasis added). As we noted in *Burdett v. Miller*, 957 F.2d 1375 (7th Cir.1992), consent is required before an amendment will be allowed. *Id.* at 1380. To determine whether there was express or implied consent, we must ascertain " 'whether the opposing party had a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment.' " *Matter of Prescott*, 805 F.2d 719, 725 (7th Cir.1986) (quoting *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir.1982)); *see also Walton v. Jennings Community Hospital, Inc.*, 875 F.2d 1317, 1321 n. 3 (7th Cir.1989); *Birdsell v. Litchfield Bd. of Fire & Police Comm'rs*, 854 F.2d 204, 209 (7th Cir.1988).

In *Burdett*, a civil RICO case, the plaintiff alleged the existence of an enterprise consisting of the defendant and his accounting firm. 957 F.2d at 1379. After trial, the district court, in its findings of fact and conclusions of law, applied Rule 15(b) to hold that the plaintiff had proved a RICO enterprise involving different individuals. *Id.* at 1380. Specifically, the court found that the plaintiff had proved an enterprise consisting of the defendant and three of his associates, but it also found that the defendant's accounting firm had not taken part in the enterprise. *Id.* at 1379. We held that the district court erred in using Rule 15(b) to change the enterprise after the trial was completed because the defendant "had no warning that evidence manifestly admissible because relevant to the [plaintiff's] conspiracy charge would also be used to establish the existence of an enterprise to which no one in the course of th[e] litigation had alluded." *Id.* In sum, we held that the district court improperly "changed the plaintiff's theory of the case after the time had passed for the defendant to present contrary evidence." *Id.; see also Birdsell*, 854 F.2d at 209; *Prescott*, 805 F.2d at 725.

■ Cross argues that Rivinius did effectively consent to the amendment of its counterclaim because the elements necessary to foreclose on a mortgage are identical to the elements necessary to obtain contribution. To assess the merits of this argument, we shall briefly review the law governing contribution and mortgage foreclosure.

Under Illinois law, "the right to contribution arises due to the compulsory payment by a joint obligor of more than his share of a common obligation." *Ruggio v. Ditkow-*

*sky,* 147 Ill.App.3d 638, 101 Ill.Dec. 423, 498 N.E.2d 747, 750 (1986). To recover on an action for contribution, a plaintiff must prove that "he has paid more than his just proportion of the joint indebtedness and it must also disclose what the excess is." *Id.; see also Midwest Bank & Trust Co. v. Roderick,* 132 Ill.App.3d 463, 87 Ill.Dec. 334, 337, 476 N.E.2d 1326, 1329 (1985).

 A defendant to a contribution action has several available defenses. *See Harris v. Buder,* 326 Ill.App. 471, 62 N.E.2d 131, 133–34 (1945) (discussing several defenses to a contribution action). Possible defenses include the statute of limitations. *See* ILL.REV.STAT. ch. 110, ¶ 13–205 (five year statute of limitations). A defendant in a contribution action may also contest its share of the debt. *See Roderick,* 87 Ill.Dec. at 337, 476 N.E.2d at 1329. Any interest due on the debt is also at issue. Thus, under the Illinois authorities, Cross Manufacturing was required to prove that it paid more than its fair share of the joint indebtedness.

An Illinois statute governs foreclosure on a mortgage. *See* ILL.REV.STAT. ch. 110, ¶ 15–110.[3] Under ¶ 15–110, a plaintiff must introduce proof which meets several requirements to obtain foreclosure. *See id.* These requirements include proving that "the mortgagor or mortgagors named were justly indebted in the amount of the indicated original indebtedness to the original mortgagee ..." and that the mortgage was properly recorded. The requirements contained in ¶ 15–110 are technical and are not identical to the elements of a contribution claim. Moreover, a defendant in a mortgage foreclosure action may raise defenses different from a defendant in a contribution action. For example, the statute of limitations for mortgage foreclosure actions is 10 years, while the limitations period for contribution actions is five years. *See* ILL.REV.STAT. ch. 110, ¶ 13–115 (10–year

limitations period for mortgage foreclosure actions).

It is readily apparent that the law governing contribution and mortgage foreclosure is not identical. A trial on a mortgage foreclosure would not automatically mean that the parties had also consented to a contribution action. Indeed, a lawyer responding to a complaint seeking mortgage foreclosure would often respond differently from a lawyer who responded to a complaint seeking contribution.

Rivinius maintains that had it received notice of the contribution claim before trial it certainly could have presented evidence relating to its share of the indebtedness. Rivinius also points out that, after the bench trial, the bankruptcy court concluded that "there was no proof as to how much [Rivinius owed Cross]" on the note. Upon remand from the district court, the bankruptcy court heard evidence presented by Cross relating to Rivinius' share of the debt. This fact, according to Rivinius, demonstrates that Cross did not prove a contribution claim at the bench trial. Cross responds that Rivinius' share of the debt was clearly established at the bench trial because the evidence demonstrated that Cross paid Rivinius' obligation on the note to Associates. We disagree with Cross because Rivinius could have presented evidence that it did not owe the full amount Cross claimed. In sum, we can find no reason to question the bankruptcy court's original findings that Cross did not prove the amount due during the bench trial.[4]

Rivinius certainly did not consent to Cross' assertion of the contribution claim because it was not aware that Cross would raise a contribution theory until Cross filed its post-trial brief after the bankruptcy court bench trial. In a situation resembling that of *Burdett,* Cross sought to

---

**3.** Paragraph 15–110 has been repealed effective July 1, 1987. *See* ILL.REV.STAT. ch. 110, ¶ 15–1106(f). The new version of ¶ 15–110 is contained in chapter 110, ¶ 15–1504(c). Under ¶ 15–1106, any complaint to foreclose the mortgage shall be adjudicated under the law in effect immediately prior to July 1, 1987. Thus, ¶ 15–

110 governs the mortgage foreclosure action brought by Cross.

**4.** Only after the remand when the bankruptcy court took additional evidence did it find that Cross had proved the amount due on its claim.

change its theory of the case when Rivinius could no longer present contrary evidence. *See* 957 F.2d at 1380. *See also Jimenez v. Tuna Vessel Granada,* 652 F.2d 415, 421 (5th Cir.1981); *International Harvester Credit v. East Coast Truck,* 547 F.2d 888, 890 (5th Cir.1977). As we noted above, had Cross brought a contribution claim, Rivinius could have contested the share of the debt due. Once the bench trial had concluded, however, it was too late for Cross' contribution claim. The bankruptcy and district courts erred in finding that Rivinius consented to the amendment of Cross' counterclaim.

■ We also agree with Rivinius that Rule 54(c) of the Federal Rules of Civil Procedure cannot save Cross' contribution claim either. Rule 54(c) provides in part that: "[e]xcept as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." *See Williamson v. Handy Button Machine Co.,* 817 F.2d 1290, 1298 (7th Cir. 1987) ("[T]he court is to determine, and award, the right relief in each case even if the complaint is silent on the question."). However, Rule 54(c) does not allow Cross to obtain relief based upon a contribution theory that was not properly raised at trial. *Cioffe v. Morris,* 676 F.2d 539, 541 (11th Cir.1982).

Because Cross did not prove during the bench trial the amount due from Rivinius to Cross, we cannot agree that the error was harmless. Consequently, judgment on Cross' counterclaim must be entered in favor of Rivinius.[5]

We REVERSE the judgment of the district court and REMAND this case for further proceedings consistent with our opinion.

CUDAHY, Circuit Judge, dissenting.

I write separately because the majority has elevated the technical over the substantial and has thereby frustrated the bankruptcy court and the district court in their efforts to achieve a just result.

In the first place, the proper standard of review here is "abuse of discretion." 6 A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1493, at 41 (2d ed. 1990) ("The decision whether the issue has been tried by express or implied consent is a matter of the trial court's discretion and will not be reversed except upon a showing of abuse."); *accord Sunstream Jet Express, Inc. v. International Air Serv. Co.,* 734 F.2d 1258, 1272 (7th Cir.1984) ("It is well-settled that '[i]n determining whether to permit an amendment under Fed. R.Civ.P. 15(b), the district court has broad discretion and will not be reversed except upon a showing of abuse.'").

The majority argues that, because the law of contribution and the law of mortgage foreclosure are not identical, the parties did not consent to try the contribution issue. It seems to me that identicality is not necessary. It should be enough that the evidence admitted to establish the pleaded claim supports the unpleaded one. In any event, it was Rivinius who originally sued for a declaration that it was not obligated to Cross and that Cross' claim should be subordinated. It was then that Cross counterclaimed to foreclose the mortgage. It is not too much of a stretch to find that Rivinius consented to whatever theory Cross pursued with respect to the alleged obligation.

In addition, the majority asserts that Rivinius was not given the opportunity to demonstrate a defense or to present evidence on the amount owed on the contribution claim. On remand, however, the bankruptcy court took additional evidence on the contribution issue, the amount of contribu-

5. We need not address the final argument presented by Rivinius. The bankruptcy court had found that Cross' contribution recovery would be reduced because of James Cross' inequitable conduct in transferring the Littleford Line to Cross without compensating Rivinius. The dis-

trict court reversed that determination on the ground that James Cross' conduct was not attributable to Cross. Because we have held that Cross could not raise a contribution theory after the bankruptcy court completed the bench trial, we need not reach this issue.

tion and possible defenses.[1] Though given this opportunity to respond and defend, Rivinius offered no further evidence.

The majority seems to have succeeded in resuscitating the theory-of-the-pleadings doctrine, clearly rejected in the Federal Rules of Civil Procedure. I would not take that course and therefore respectfully dissent.

1. The issues stipulated by the parties to be resolved on remand were the following:

A. CONTRIBUTION

1. On the facts proved before this court in the trial, did CROSS prove the necessary elements for a right to contribution? (Legal issue)

2. If CROSS proved the necessary elements for a right to contribution, what is the amount of the contribution right based upon facts proved at trial? (Legal issue)

B. LACHES

1. Is laches an appropriate defense to CROSS's claim for CONTRIBUTION? (Legal issue)

2. If laches is a potential defense for DEBTOR in this case, did CROSS sit on its rights a sufficient length of time to apply the doctrine of laches? (Legal and factual issue)

3. If laches is a potential defense for DEBTOR in this case, was DEBTOR sufficiently prejudiced by the actions of CROSS so as to warrant the application of the defense of laches? (Legal and factual issue)

4. If a right to CONTRIBUTION has been proved by CROSS, should leave be granted to amend the pleadings? (Legal issue)

C. STATUTE OF LIMITATIONS

1. If CROSS properly has a cause of action against DEBTOR for CONTRIBUTION, when did the STATUTE OF LIMITATIONS in respect to such cause commence running? (Factual and legal issue)

2. If CROSS properly has a cause of action against DEBTOR for CONTRIBUTION, is that action barred by the STATUTE OF LIMITATIONS? (Legal issue)

3. Did the filing of suit by DEBTOR waive any STATUTE OF LIMITATIONS defense which DEBTOR might have? (Legal issue)

D. AMENDMENT OF PLEADINGS

1. If a right to CONTRIBUTION has been proved, should leave be granted to amend the pleadings? (Legal issue)

*In re Rivinius*, No. 78–10191/C (Bankr.C.D.Ill. Apr. 2, 1991), at 13.