**Mark BELL, d/b/a P.D.I., Plaintiff–Appellant,**

v.

**Robert G. DOUGLASS a/k/a Robert G. Douglas, Jr., Defendant–Appellee.**

**No. 94 C 7245.**

United States District Court, N.D. Illinois, Eastern Division.

July 19, 1995.

Cindy M. Johnson, Kevin Edward Posen, Teller, Levit & Silvertrust, Chicago, IL, for appellant.

James Frederick Carlson, Law Offices of James F. Carlson, Chicago, IL, for appellee.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

On December 5, 1994, Mark Bell ("Bell") appealed from Bankruptcy Judge John Schwartz's order entering judgment for Robert G. Douglass ("Douglass") and holding Douglass' debt to Bell dischargeable. For the reasons discussed below, we affirm in part and remand in part.

### I. Background

In 1981, Bell sought investments to help him reduce his tax burden. Pl.'s Br. at 7.[1] "Through [his] brother in law, he met Richard Hillebrand ("Hillebrand"), a contractor who ... encouraged [Bell] to look into 'Section 8 HUD' projects." *Id.* "Hillebrand told [Bell] that [he] was working on certain HUD projects with [Douglass] and that [Douglass] was an expert in [them]." *Id.* Bell, a periodontist, "did not have any experience in real estate development projects." *Id.*

Douglass "operated through the business name of Douglass Development." *Id.* In early November 1981, "Hillebrand arranged a meeting between [Bell], [Douglass] and himself." *Id.* at 7–8. "At that meeting, [Douglass] described various HUD projects he and Hillebrand were developing." *Id.* at 8. Specifically, Douglass told him about a HUD project at 1214 N. LaSalle Street in Chicago, Illinois. *Id.* Douglass offered Bell the opportunity to invest as a partner in the project at LaSalle Street. *Id.* at 9. For Bell to invest, it would cost him $50,000. *Id.*

Bell decided to invest and, on December 5, 1981, he, his attorney and Hillebrand met to do the paperwork. *Id.* at 12. At the meeting, Hillebrand produced an incomplete partnership agreement. *Id.* Moreover, he said that, unless Bell immediately signed the agreement and invested money, the project would likely fall through. *Id.* at 12–3. Bell and his attorney, who had no experience with such projects, considered the incomplete agreement and necessary investment. Def.'s Br. at 2. They decided that Bell should sign the agreement and make the investment, which Bell did. *Id.;* Pl.'s Br. at 14. Subsequently, Bell invested more money in the project at LaSalle Street and in other projects. Pl.'s Br. at 16.

Bell lost his investment. In an Iowa state court, he sued Douglass and Hillebrand and, in 1991, he obtained a judgment for fraud. *Id.* at 18. In January 1992, he registered the judgment with a Circuit Court in Illinois. On March 13, 1992, Douglass "commenced a Chapter 7 case in the Northern District of Illinois." Bankr.Memo.Op. at 3 (May 26, 1993). "On July 6, 1992, [Bell] initiated this adversary proceeding seeking a determination that the judgment entered by the Iowa court is excepted from discharge." *Id.* On October 18, 1994, Bell lost his case.

### II. Standard of Review

■ We review the bankruptcy court's legal conclusions de novo and its factual findings for clear error. *Meyer v. Rigdon,* 36 F.3d 1375, 1379 (7th Cir.1994).

### III. Discussion

#### A. Did the Court Err When It Denied Summary Judgment?

Bell argues that the bankruptcy court erred when it denied his motion for summary judgment, in which he sought to except Douglass' discharge under 11 U.S.C. § 523(a)(2)(A) ("§ 2A").[2] The Iowa court granted Bell's original motion for summary

---

1. The bankruptcy court made few findings of fact. So, to explain the background, we rely heavily on Bell's opening brief, which Douglass describes as "accurate but incomplete." Def.'s Br. at 1. Where Bell's brief is incomplete, we rely on Douglass' brief. Of course, we rely on the parties' briefs only to the extent that the record supports their contents.

2. In relevant part, § 2A provides: "A discharge under [Chapter 7] ... does not discharge an individual debtor from any debt—for money, property, [or] services ... to the extent obtained by—false pretenses, a false representation, or actual fraud...."

judgment and found that Douglass committed fraud. Based on that finding, Bell argues that Douglass already litigated the issue of fraud and should be collaterally estopped from relitigating it. He already litigated it because he "hired attorneys, who eventually withdrew." Pl.'s Br. at 25. Moreover, he understood the importance of the litigation because, after the court entered judgment on liability, he directed his then not-of-record attorney to negotiate with Bell an agreed judgment on damages. Douglass "could have appeared at the [damages] hearing, asked that the [judgment] be vacated and asked for time to respond to the request to admit." *Id.* at 28. Douglass "chose not to do so." *Id.* Consequently, Bell argues that the bankruptcy court erred.

Douglass argues that the court did not err because he did not actually litigate the issue of fraud. "The judgment of the Iowa court was substantially based upon the unanswered request to admit, not upon a hearing on the merits." Def.'s Br. at 4. Moreover, extrinsic factors limited the reliability of the state court's finding. "[I]t is significant … that [Bell] … waited until after counsel for Mr. Douglass withdrew—because he was financially embarrassed and could not pay them— before personally serving Mr. Douglass with a request to admit facts that was conclusionary and virtually a free ticket.…" *Id.* Consequently, Douglass argues that the bankruptcy court did not err.

In *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), the Supreme Court "clarif[ied] that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)." *Id.* at 285, 111 S.Ct. at 658–659. Specifically, the principles apply "[w]here a state court determines factual questions using the same standards as the bankruptcy court would use." *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir.1987). "Although the [state] and [federal] standards for preclusion are often the same, the full faith and credit statute mandates that a federal court presented with a prior state court judgment must first look to the state's rules of preclusion." *Grynevich v. Grynevich*, 1994 WL 263489, at *11 (Bankr.N.D.Ill. May 16,

1994). Here, the state and federal standards are the same. *See Stanley v. Fitzgerald*, 509 N.W.2d 454, 457 (Iowa 1993); *In re Indvik*, 118 B.R. 993, 1006 (Bankr.N.D.Iowa 1990); *and cf. Klingman*, 831 F.2d at 1295. Both require that a plaintiff satisfy four elements: "(1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) th[e] issue must have been actually litigated; (3) it must have been determined by a valid final judgment; and (4) the determination must have been essential to the judgment." *In re Indvik*, 118 Bankr. at 1006; *see Klingman*, 831 F.2d at 1295.

In this case, we focus on the second, "actual litigation" element. There is little Iowa common law concerning that element, but the leading case is *Ideal Mutual Insur. Co. v. Winker*, 319 N.W.2d 289 (Iowa 1982). There, the court "determin[ed] whether a guilty plea entered in a criminal prosecution precludes the convicted party from relitigating the issue of his criminality in a subsequent declaratory action brought against him by an insurer to construe an exclusionary provision of its policy." *Id.* at 290. The court stated that "[a]n important characteristic which distinguishes the criminal action terminated by a guilty plea from other judicial proceedings in which no actual litigation takes place—the ordinary default case in civil proceedings—is the requirement that the trial court ascertain a factual basis exists for the plea." *Id.* at 295 (citing Iowa R.Crim.P. 8(2)(b)). The court continued:

> Although the parties do not litigate the question of whether the accused committed each element constituting the crime, the effect of the factual rule is to require the existence of evidence sufficient to convince the trial court that the plea is founded on fact. Once a guilty plea is accepted, a judicial determination has thus been made with respect to the essential elements of the crime. We hold the factual basis requirement for guilty pleas is sufficient to meet the second requirement of our issue preclusion principle.

*Id.*

Discussing its holding, the court stated that it "view[ed] [its] position as consistent with the rationale underlying the actual liti-

gation requirement of the Restatement." *Id.* at 296. It continued:

> The apparent purpose of that requirement is to preclude relitigation only after the parties have obtained a judicial determination of an issue following the exploration of that issue through the litigative process. Judgment entered after trial, however, is not the only type of determination which will satisfy the purpose of the actual litigation requirement. That purpose can also be satisfied by a determination made without the full exploration that an issue receives during trial on the merits—by a motion for summary judgment, a motion to dismiss, or their equivalents. The rule we adopt today likewise guarantees adequate exploration of the issues.... According issue preclusive effect to a guilty plea for which a factual basis has been found is ... different from giving such effect to entry of a default judgment when no exploration of the issues has occurred.

*Id.; see Hall v. Barrett,* 412 N.W.2d 648, 651 (Iowa App.1987) (following *Ideal Mutual* and stating that "[c]ollateral estoppel may apply 'no matter how slight was the evidence on which a determination was made ...'") (quoting *Continental Can Co. v. Marshall,* 603 F.2d 590, 596 (7th Cir.1979)); *see also Henson v. Garner,* 881 F.2d 579, 580 n. 1 (8th Cir.1989), *rev'd on other grounds,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (stating that "[t]he issue of fraud was actually litigated and was not part of a stipulated, consent or default judgment"); *U.S. v. Young,* 804 F.2d 116, 118 (8th Cir.1986), *cert. denied,* 482 U.S. 913, 107 S.Ct. 3184, 96 L.Ed.2d 673 (1987) (stating that "[a] fact established in prior litigation not by judicial resolution but by stipulation has not been 'actually litigated' and thus is the proper subject of proof in subsequent proceedings").

Under Iowa law, then, a party may actually litigate an issue resolved on a motion for summary judgment, but not on an entry of default judgment. In this case, Douglass' issue of fraud was resolved on a motion for summary judgment, but on the basis of defaulted facts. What here?

In *Brill v. Dvorak,* 118 B.R. 619 (Bankr. N.D.Ill.1990), the court considered a similar situation. There, the "[d]ebtor testified that he filed an appearance and answer in the malpractice case. [The creditor] subsequently moved for summary judgment. [The] [d]ebtor testified that he did not respond to the motion for summary judgment. He claimed that he never received notice of that motion. However, he never moved to vacate the summary judgments that were subsequently entered against him." *Id.* at 623. The court "addressed whether judgment entered when a party fails to respond to a motion for summary judgment has been 'actually litigated.'" *Id.* To address it, the court "determine[d] whether the judgment entered when the [d]ebtor failed to respond to [the creditor's] motion for summary judgment [was] qualitatively different from a default judgment." *Id.* at 625. The court reasoned:

> Judgment pursuant to an unopposed motion for summary judgment might well be more 'reliable' than a default judgment. In contrast to the default judgment situation (where the court considers only the facts as alleged in the complaint), before granting summary judgment a court is required to examine materials demonstrating at least prima facie the factual predicate underlying an unopposed motion for summary judgment, so as to ensure that the facts entitle the moving party to judgment. However, the court makes no independent inquiry into the evidence. Indeed, a court may treat a failure to oppose a summary judgment motion as just a form of default judgment.
>
> When judgment is entered pursuant to an unopposed motion for summary judgment, as with most default judgments, the court has not heard arguments or evidence of the party against whom judgment was entered. Examination by a court of documentary evidence submitted by one party in support of its motion for summary judgment to see if plaintiff's prima facie burden is qualitatively different from a court or jury evaluating evidence after the opposing party has contested the moving party's evidence. The phrase 'actually litigated' suggests that all parties to a dispute have been actively involved throughout the pro-

ceeding and have presented evidence and advocated their positions. The phrase 'actually litigated' should not be read to refer only to the level of independent judicial inquiry into the prima facie showing of facts underlying an undefended motion for summary judgment.

Therefore, [the] [d]ebtor here is not collaterally estopped by the unopposed state court summary judgment against him from litigating the issue of whether his conduct was willful and malicious.

*Id.* at 626.

Although the results in *Ideal Mutual* and *Dvorak* run counter, the reasoning in those cases runs parallel. First, both were concerned with whether courts independently make inquiries and find facts. Under *Ideal Mutual*, a court must follow Rule 8(b)(2) before collateral estoppel may apply. Under *Dvorak*, a court must consider the opposition to a motion for summary judgment before collateral estoppel may apply. Second, both were concerned with whether potential estoppees are actively involved in the court proceedings. Under *Ideal Mutual*, a court must ensure that the accused receives all of the constitutional safeguards that keep him motivated and aware before collateral estoppel may apply. *See* 319 N.W.2d at 296. Under *Dvorak*, a court must ensure that the party actively advocates his position before collateral estoppel may apply.

■ In this case, the court did not make independent findings of fact. It took Bell's statements in his request for admission as "deemed admitted" and looked no further. Moreover, Douglass was not actively involved in the court proceedings. He did not respond to the requests for admission, and he did not move to vacate the summary judgment. *See Dvorak*, 118 B.R. at 623 (stating that the debtor "never moved to vacate the summary judgments that were entered against him").[3] That Douglass hired lawyers proves little because they left him when he needed them most. In any event, we dis-

count the reliability of the court proceedings because Bell filed his request for admissions after he discovered that Douglass' counsel withdrew. Therefore, collateral estoppel does not apply.

Therefore, the bankruptcy court did not err when it denied Bell's motion for summary judgment.

### B. Did the Court Err When It Denied Judgment Under § 2A?

#### 1. The Reliance Requirement

Bell argues that the bankruptcy court erred when it denied him judgment under § 2A because he satisfied that Section's reliance requirement. The court found that Bell actually relied on Douglass' allegedly false statements. Pl.'s Br. at 31–2. Yet the court proceeded to find that Bell's actual reliance was unreasonable. Bell argues that, "[o]nce a court finds that a plaintiff actually relied upon the statements made by the defendant, there is no need for the [c]ourt to determine whether the reliance was reasonable." *Id.* at 34. Consequently, Bell argues that the court erred.

Douglass responds that the bankruptcy court did not err because Bell did not satisfy the reliance requirement. Douglass supports the court's finding that Bell's actual reliance was unreasonable. He comments that "[t]he single greatest failure of proof by [Bell] at the trial was the reasonableness of his reliance on the outlandish statements that he claims were made by Mr. Douglass." Def.'s Br. at 5. In his brief, Douglass lists several of the "outlandish statements." *Id.* Douglass argues that the court correctly determined that Bell's reliance was unreasonable and, based on that determination, correctly denied him judgment. Consequently, he argues that the bankruptcy court did not err.

In *Mayer v. Spanel Int'l Ltd.*, 51 F.3d 670 (7th Cir.1995), the Seventh Circuit reviewed two cases where the debtors "insist[ed] that their creditors did not 'reasonably' rely on their false statements." *Id.* at 674. In both

---

**3.** Bell offers *Bishop v. Herwig*, 77 B.R. 662 (Bankr.S.D.Ill.1987) as authority to the contrary, but his offering is unpersuasive. First, the trier of fact made an independent investigation and finding; the case went to trial. And second, the

collateral estoppee was actively involved; he filed an answer and counterclaim. The *Bishop* court specifically distinguished its "one-sided trial" situation from our default situation.

cases, the district judges turned to *In re Kimzey,* 761 F.2d 421 (7th Cir.1985), for an explanation of the reasonable reliance requirement. And in both cases, the district judges "understood [the requirement] ... to entail proof that the creditor conducted an investigation reasonably designed to discover whether the would-be borrower is telling the truth." *Id.*

The *Mayer* court, however, "confess[ed] to some doubt that *Kimzey* is an accurate guide to [§ 2A]." *Id.* In fact, it stated that support for *Kimzey* 's interpretation of the reasonable reliance requirement is "hard to come by—at least if reliance, to be 'reasonable' or 'justifiable,' includes an element of investigation." *Id.* at 675. The court reasoned that "[t]he common law of fraud has a mental-state requirement; it does not have a reasonable-investigation requirement." *Id.* "Fraud is an intentional tort, and victims need not take precautions against such torts in order to preserve their rights." *Id.* " 'Reliance' is an element of fraud, but reliance in fact does not lose its status in law just because the victim is careless." The court continued:

> A 'reliance' requirement ... excludes recovery if the investor knows or suspects the truth.... If the investor possesses information sufficient to call the representation into question, he cannot claim later that he relied on or was deceived by the lie. This is not because he has a duty to investigate lies ..., though; it is, rather, because the false statement is not material under the circumstances.... We think that the best understanding of the passing reference in *Kimzey* to reliance is that this term means the same in the definition of fraud under bankruptcy law as in the definition of fraud under securities law: it denotes the combination of materiality and causation.

*Id.* at 676 (paragraphs omitted).

In this case, the bankruptcy court relied on *In re Kimzey.* It stated that "[Bell's] burden of proof included the element of reasonable reliance.... The court finds that there was reliance, but the evidence does not prove that the reliance was reasonable." Judgment Order at 2. Under

*Mayer,* which the Seventh Circuit handed down after the able bankruptcy court ruled, it is unclear whether the court's finding is proper. Did the court find the reliance unreasonable because it properly imposed on Bell a duty to acknowledge a suspected truth? Or did it find the reliance unreasonable because it improperly imposed on Bell a duty to investigate? The lack of clarity prompts us to remand this case. Perhaps the remand is unnecessary, though, a proposition to which we now turn.

### 2. The Mental State Requirement

According to the *Mayer* court, there are "three [requirements] in [§ 2A]: falsity, fraudulent intent, and reasonable reliance." 51 F.3d at 674. If the bankruptcy court indirectly found that Bell cannot satisfy the second requirement, fraudulent intent, Bell could not prevail on his § 2A count in any event. We consider whether the court's finding on the issue of "willfulness" makes the remand unnecessary.

Bell argues that the bankruptcy court clearly erred when it found that Douglass did not act willfully "because [the court] failed to apply the correct standard of willfulness." Pl.'s Br. at 38. The "correct" standard requires only that Douglass act with "complete and reckless disregard for the truth." *Id.* According to Bell, Douglass stated that if Bell invested with him, Bell "would receive extremely good tax benefits and ... a very good return on his investment." *Id.* (citing Tr. of Sept. 2 at 23, 31, 35, 38–41, 54, 67, and 69). Bell would face "no risk" and "could have his money back at any time." *Id.* (citing Tr. of Sept. 2 at 23, 30–1, 34, 36, 38–41, 54, 62, 67, and 69). And Bell could "take advantage of the tax benefits and the profits." *Id.* (citing Tr. of Sept. 2 at 34–5, 62–3). Bell argues that "none of these [statements] were true. Douglass either knew they were untrue at the time he made them or, at the very least, made them in reckless disregard of the truth." *Id.* Consequently, Bell argues that the court clearly erred.

Douglass responds that the court did not clearly err. "This case is not comparable to one where a con man takes the life savings of some elderly couple for phony furnace re-

pairs." Def.'s Br. at 6. "The clear facts are that there were three HUD-type projects underway and that [Douglass] had invested a substantial amount of his own money, which he lost." *Id.* "The money from [Bell] was used for the purpose of furthering these real estate developments." *Id.* Moreover, also to further these developments, Douglass "retained the legal services of a prominent real estate expert." *Id.* Douglass argues that his "action[s] [were] not consistent with one perpetrating a fraud." *Id.* at 7. Consequently, he argues that the court did not clearly err.

In *Mayer*, the court noted that, although the second requirement of § 2A is fraudulent intent, " 'fraud' is [only] one of three elements in the statutory list. By including 'false pretenses [and] false representation'[,] Congress may have done away with an obligation to show intent to defraud." *Id.* at 674. The court, however, "hesitate[d] ... to strip all intent components from [§ 2A]." *Id.* Instead, it retained them, but stated that "reckless disregard of the truth is a form of intent." *Id.* at 675.

■ In this case, when the court analyzed Bell's proposed 11 U.S.C. § 523(a)(6) ("§ 6") [4] count, it found that "there was no proof of willfulness." Judgment Order at 1. Did the court indirectly find that there was no proof of fraudulent intent? As a first cut, likely not because §§ 6 and 2A have different mental state requirements; § 6 has willfulness and § 2A has recklessness or intent. " 'Under [§ 6], ... willful means deliberate or intentional.' " *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994) (quoting *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986)). So § 6 requires deliberation or intent, and § 2A requires a recklessness or intent. The difference between the requirements may be wide if, under § 6, the bankruptcy court considered deliberation and if, under § 2A, we consider recklessness. Or the difference may be narrow if, under § 6, the bankruptcy court considered intent and if, under § 2A, we likewise consider intent. Widening or narrowing the difference that way, however,

relies more on sophistic manipulation than honest interpretation.

The difference may be unimportant if the basis for the bankruptcy court's finding encompasses both mental state requirements. We look to the basis, then, which is evident from the transcript passage where the court ruled on Bell's motion to amend the pleadings:

Ct: I presume that what you are saying is that they injured Dr. Bell by obtaining money from him—that is, he did, Mr. Douglass.

Bl: Correct, by taking monies earmarked for the partnership and then not using them for partnership purposes.

Ct: Well, that's never been proven one way or the other. That is why I'm— there is no proof in here of that; there are allegations of it, one swearing against another swearing.

Tr. of Sept. 22 at 3. The court based its finding on Bell's failure to prove that Douglass engaged in any injurious activity. That basis encompasses both mental state requirements. In other words, if Douglass engaged in no injurious activity, he engaged in no such activity recklessly, intentionally, maliciously or willfully. Therefore, in this instance, it is unimportant whether the court applied the correct mental state requirement.

Yet the problem is not with the difference in mental state requirements; it is with the difference in factual findings. In the passage above, the court found only that Douglass did not injure Bell by taking monies earmarked for the partnership and using them for improper purposes. It did not make findings about Bell's other allegations of false pretenses, false representations, and actual fraud.

Are such findings necessary? Are the facts clear? To paraphrase the bankruptcy court, the evidence surrounding Bell's allegations amounts to "one swearing against another swearing." *Id.* For example, Bell swore that Douglass promised him a very good return on his investment. But Doug-

---

**4.** Section 6 provides: "A discharge under [Chapter 7] ... does not discharge an individual debtor from any debt—for willful and malicious injury by the debtor to another entity or to the property of another entity."

lass swore that he promised no such thing. Tr. of Sept. 2 at 124–5, 131. Bell swore that Douglass promised him no risk. But Douglass swore that he promised no such thing. *Id.* at 117–9. Bell swore that Douglass promised him that, if Bell felt uneasy, Douglass would return his money. But Douglass swore that he promised no such thing. *Id.* at 125. Bell swore that Douglass insisted that he invest quickly. But Douglass swore that he insisted no such thing. *Id.* at 148. Bell swore that Douglass promised he was ready to break ground on his projects. But Douglass swore that he promised no such thing. *Id.* at 120–1. In the face of such a swearing match, we are at an impasse.

Therefore, we remand this case for the bankruptcy court to reassess Bell's § 2A count and clarify its findings in accordance with *Mayer* and our discussion above.

### C. Did the Court Err When It Denied the Motion to Conform?

■ Bell argues that the bankruptcy court erred when it denied his motion to conform because Douglass "implicitly allowed the [partnership/accounting] issue to be tried." Pl.'s Br. at 41. "[Douglass] did not raise any objection to Plaintiff's Proposed Findings of Fact and Conclusions of Law." *Id.* "[He] did not raise any objection to the evidence being introduced at trial until, at the very end of [his] case, during [Bell's] re-direct of the final witness, [Douglass'] attorney stated that the partnership/accounting issue was not raised in the pleadings." *Id.* "[Douglass] only formally objected when the Court raised an objection about [Bell's] cross examination of [Douglass] regarding partnership/accounting issues, but then stated that it would not rule unless [Douglass] made an objection." *Id.* Consequently, Bell argues that the court erred.

Douglass responds that the court did not err because Bell's motion "constituted surprise." Def.'s Br. at 5. "[Douglass] was not expecting to counter a charge of not rendering an official accounting and, therefore, was not ready to present evidence. Such evidence would have been extensive—not something that would just be ordinarily found in [Douglass'] or [his] counsel's file." *Id.* "In-

deed, any references to an accounting during the trial appeared to be nothing more than some corollary evidence introduced in an attempt to buttress the claim of fraud, not a separate claim of non-dischargeability." *Id.* Consequently, Douglass argues that the court did not err.

In relevant part, Fed.R.Civ.P. Rule 15(b) ("Rule 15(b)") provides that:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. . . .

In *In re Rivinius, Inc.,* 977 F.2d 1171 (7th Cir.1992), the Seventh Circuit addressed Rule 15(b)'s consent requirement. "To determine whether there was express or implied consent, we must ascertain ' "whether the opposing party had fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment." ' " *Id.* at 1175 (quoting *In re Prescott,* 805 F.2d 719, 725 (7th Cir.1986) (quoting another case)); *see Burdett v. Miller,* 957 F.2d 1375 (7th Cir. 1992).

In this case, the bankruptcy court found that Douglass did not consent to trying the partnership/accounting issue as it concerns § 6. Tr. of Sept. 22 at 3–4. There is strong basis for that apparent finding. Douglass did not expressly consent. His counsel considered the issue only as it applied to § 2A. Tr. of Sept. 2 at 197. When his counsel understood that the issue might apply to § 6, it "c[a]me to [him] as a surprise." *Id.* at 198. And when it became clear that, moreover, Bell intended the issue to apply to § 6, his counsel objected, even if at the court's prompting. *Id.* at 200–1.

Next, Douglass did not impliedly consent. He could have presented additional evidence.

DA:[5] And as you sit there today, knowing the records you have and the records that are available ... could [you] make an accounting?

Do:[6] Yes.

*Id.* at 197. Moreover, Bell frustrated Douglass from presenting, or at least attempting to present, that evidence.

Ct: Perhaps what we should do here is adjourn and come back ... and argue this point as to where we are.... That would give me a chance to look at this.

BA:[7] Your Honor, I don't think the plaintiff is willing—I don't think it's practical at this point to actually have an accounting done due to the length of the lawsuit 13 years ago.... What I'm getting at is I just don't think it's physically ... possible to be done at this point.

Ct: Perhaps.

DA: That's [Bell's] [c]ounsel's surmise.

*Id.* at 199–200. Douglass did not have a fair opportunity to defend Bell's proposed § 6 count. We agree with the bankruptcy court's finding[8] that Douglass did not expressly or impliedly consent, and, therefore, the court did not err when it denied Bell's motion to conform.[9]

### D. Did the Court Err in Denying Bell's Motion in Limine?

■ Bell argues that the bankruptcy court erred when it denied his motion in limine to preclude Douglass' testimony because of Douglass' alleged "willful disregard for following the Court's orders." Pl.'s Br. at 29. Bell argues that Douglass disregarded filing deadlines such as for his answer, "exhibit lists, witness lists, and proposed findings of fact and conclusions of law." *Id.* at 29–30. And when Douglass finally submitted his ma-

terials, they allegedly did not conform to the court's scheduling order. *Id.* at 30. As a result, Bell claims he was prejudiced. Consequently, he argues that the court erred.

Douglass responds that the bankruptcy court did not err. He argues that "there was [no] surprise in [Douglass] testifying in his own behalf." Def.'s Br. at 4. "There were no additional exhibits offered nor other witnesses. It is without merit to suggest that a party has been prejudiced by an inability to prepare for cross examination of witnesses never called [and exhibits never submitted]." *Id.* Consequently, Douglass argues that the court did not err.

In *Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293 (7th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 308, 126 L.Ed.2d 255 (1993), the Seventh Circuit stated that "[w]e review a [trial] court's decision to preclude evidence in granting a motion *in limine* under an abuse of discretion standard." *Id.* at 1293. "Generally, an abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court. If reasonable persons could differ, no abuse of discretion can be found." *Id.* (quoting *Harrington v. DeVito*, 656 F.2d 264, 269 (7th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982)). If what Bell alleges is true about Douglass and his counsel, it reflects poorly on them. The bankruptcy court, however, found that the allegations were insufficient to warrant a sanction such as precluding Douglass from testifying. Given that the prejudice that Bell suffered was more anticipated than realized, we cannot say that the court abused its discretion. Therefore, the court did not err when it denied Bell's motion in limine.

---

5. Douglass' attorney.

6. Douglass.

7. Bell's attorney.

8. Because we find that the bankruptcy court did not err even on a de novo standard of review, we do not need to address the conflicting common law on the proper standard. The *Rivinius* majority stated that the proper standard is de novo. 977 F.2d at 1175. In a strong dissent, however,

the minority stated that the proper standard is abuse of discretion. *Id.* at 1177 (Cudahy, J., dissenting) (citing Charles A. Wright et al., *Federal Practice and Procedure* § 1493, at 41 (2d ed. 1990) and *Sunstream Jet Express, Inc. v. Int'l Air Serv. Co.*, 734 F.2d 1258, 1272 (7th Cir.1984)).

9. Because the court did not err, we do not need to reach the substance of Bell's proposed § 6 count, including the bankruptcy court's finding that Douglass did not act with the requisite willfulness.

## IV. Conclusion

Therefore, for the reasons discussed above, we affirm in part and remand in part for the bankruptcy court to reassess Bell's § 2A count and clarify its § 2A findings in accordance with *Mayer* and this opinion.